# 21-2891

## In the United States Court of Appeals

### FOR THE SECOND CIRCUIT

RAMON DEJESUS CEDENO,

*Plaintiff – Appellee*,

v.

RYAN SASSON, ARGENT TRUST COMPANY, DANIEL BLUMKIN, IAN BEHAR, STRATEGIC FINANCIAL SOLUTIONS, LLC, DUKE ENTERPRISES LLC, TWIST FINANCIAL LLC, BLAISE INVESTMENTS LLC,

*Defendants – Appellants*.

On Appeal from the United States District Court for the Southern District of New York, No. 20-cv-9987, Hon. John G. Koeltl

## BRIEF OF APPELLANTS

GROOM LAW GROUP, CHARTERED
Lars C. Golumbic
Michael J. Prame
Sarah M. Adams
Paul J. Rinefierd
1701 Pennsylvania Avenue, NW,
  Suite 1200
Washington, DC  20006
(202) 857-0620

*Counsel for Argent Trust Company*

MORGAN, LEWIS & BOCKIUS LLP
Jeremy P. Blumenfeld
Margaret M. McDowell
Jared R. Killeen
Antonia M. Moran
1701 Market Street
Philadelphia, PA  19103
(215) 963-5000

Michael E. Kenneally
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Ryan Sasson, Daniel Blumkin, Ian Behar, Duke Enterprises LLC, Twist Financial LLC, Blaise Investments LLC, and Strategic Financial Solutions, LLC*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendants-Appellants state as follows:

- Argent Trust Company states that Argent Trust Company is a private Tennessee corporation wholly owned by Argent Financial Group, Inc. No public company is an owner of 10% or more of the stock of Argent Trust Company. Origin Bancorp, Inc., a publicly traded company, owns more than 10% of the common stock of Argent Financial Group, Inc.

- Strategic Financial Solutions, LLC states that its parent corporation is Strategic Family, Inc. and no publicly held corporation owns more than 10% of Strategic Financial Solutions, LLC's stock.

- Duke Enterprises LLC states that it does not have a parent corporation and no publicly held corporation owns more than 10% of its stock.

- Twist Financial LLC states that it does not have a parent corporation and no publicly held corporation owns more than 10% of its stock.

- Blaise Investments LLC states that it does not have a parent corporation and no publicly held corporation owns more than 10% of its stock.

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ................................................................1

JURISDICTIONAL STATEMENT ........................................................4

ISSUE PRESENTED ................................................................5

STATEMENT OF THE CASE................................................................5

I.    The Employee Retirement Income Security Act...........................................5

II.   ERISA Retirement Plans ................................................................7

III.  The Strategic ESOP ................................................................9

IV.   Relevant Procedural History................................................................12

      A.    Plaintiff's Complaint and Allegations................................................12

      B.    Defendants' Motion to Compel Arbitration........................................13

SUMMARY OF ARGUMENT ................................................................15

STANDARD OF REVIEW ................................................................17

ARGUMENT ................................................................18

I.    This Case Satisfies All the Requirements for Compelling Arbitration........18

II.   The FAA and ERISA Require Enforcement of the Arbitration
      Provision in the Plan Document According to Its Terms............................21

III.  The District Court Erred in Holding That ERISA Creates an
      Unwaivable Right to Pursue Recovery for Other Plan Participants.............24

      A.    The Theoretical "Effective Vindication" Exception Does Not
            Support Plaintiff's Efforts to Avoid Individualized Arbitration........25

ii

**TABLE OF CONTENTS**
**(continued)**

Page

B.    *Epic Systems* Requires a "Clearly Expressed Congressional
      Intention" to Forbid Individualized Arbitration....................................26

C.    ERISA Contains No Clearly Expressed Congressional Intention
      to Prohibit Agreements to Engage in Individualized Arbitration. .....29

      1.    Congress Made Clear That ERISA Does Not Override
            Any Other Federal Statutes........................................................30

      2.    The Plain Language of ERISA §§ 502(a)(2) and 409(a)
            Does Not Prohibit Agreements for Individualized
            Arbitration. .................................................................................31

      3.    Governing Precedent Confirms That the Right to Bring
            Suit Under ERISA §§ 502(a)(2) and 409(a) on Behalf of
            Other Plan Participants May Be Waived. .................................35

CONCLUSION .........................................................................................................42

CERTIFICATE OF COMPLIANCE .......................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009)..................................................................25

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)....................................................................5

*Alexander v. Gardner-Denver Co.*,
  415 U.S. 36 (1974).....................................................................25

*Alfarone v. Bernie Wolff Constr. Corp.*,
  788 F.2d 76 (2d Cir. 1986) ......................................................30

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)............................................................*passim*

*Amaro v. Cont'l Can Co.*,
  724 F.2d 747 (9th Cir. 1984) ...................................................20

*Arciniaga v. Gen. Motors Corp.*,
  460 F.3d 231 (2d Cir. 2006) ....................................................21

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................24

*Balestracci v. NSTAR Elec. & Gas Corp.*,
  449 F.3d 224 (1st Cir. 2006)....................................................23

*Bird v. Shearson Lehman/Am. Express, Inc.*,
  926 F.2d 116 (2d Cir. 1991) .........................................3, 16, 21

*Cedeno v. Argent Tr. Co.*,
  No. 20-cv-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2, 2021) ...........5

*Coan v. Kaufman*,
  457 F.3d 250 (2d Cir. 2006) ..............................................38, 40

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ...............................................................22

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) ...........................................................40

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)....................................................................19, 23

*Dorman v. Charles Schwab Corp.*,
780 F. App'x 510 (9th Cir. 2019) .......................................19, 40, 41

*Dorman v. Charles Schwab Corp.*,
934 F.3d 1107 (9th Cir. 2019) ........................................................20

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018)..........................................................*passim*

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)........................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)................................................................*passim*

*Graden v. Conexant Sys. Inc.*,
496 F.3d 291 (3d Cir. 2007) .........................................................8, 9

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013)........................................................................22

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)......................................................................33

*Holmes v. Baptist Health S. Fla., Inc.*,
No. 21-cv-22986, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022) .........26

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)....................................................................7, 8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ........................................................18, 20

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008)..................................................................*passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)..................................................................*passim*

*Mathews v. Sears Pension Plan*,
    144 F.3d 461 (7th Cir. 1998) ..............................................................19

*McAllister v. Conn. Renaissance Inc.*,
    496 F. App'x 104 (2d Cir. 2012) ........................................................18

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ..................................................................17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)........................................................................25, 27

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)................................................................................22

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)................................................................................30

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) ..................................................4, 41, 42

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ..............................................................22

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................22

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)..........................................................................8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013)..............................................................................18, 23

STATUTES

28 U.S.C. § 1331 ...........................................................................................4

Age Discrimination in Employment Act
  29 U.S.C. § 621 *et seq.* ...................................................24, 26, 33, 34

Employee Retirement Income Security Act of 1974
  29 U.S.C. § 1001 *et seq.* ...................................................................*passim*
  29 U.S.C. § 1002 (ERISA § 3) .................................................................5, 6, 7
  29 U.S.C. § 1102 (ERISA § 402) ..........................................................5, 9, 19, 23
  29 U.S.C. § 1103 (ERISA § 403) .................................................................5
  29 U.S.C. § 1104 (ERISA § 404) .................................................................5
  29 U.S.C. § 1107 (ERISA § 407) .................................................................9
  29 U.S.C. § 1109 (ERISA § 409) ............................................................*passim*
  29 U.S.C. § 1132 (ERISA § 502) ............................................................*passim*
  29 U.S.C. § 1144 (ERISA § 514) .............................................................19, 30

Fair Labor Standards Act of 1938
  29 U.S.C. § 201 *et seq.* .........................................................................34
  29 U.S.C. § 216.......................................................................................33, 34

Federal Arbitration Act
  9 U.S.C. § 1 *et seq.* ...............................................................................1, 2
  9 U.S.C. § 2.............................................................................................27
  9 U.S.C. § 16............................................................................................4

National Labor Relations Act of 1935
  29 U.S.C. § 151 *et seq.* .........................................................................28
  29 U.S.C. § 157 (NLRA § 7) ...................................................................28

RULES

FED. R. APP. P. 4.............................................................................................5

## INTRODUCTION

This case presents an important question about the interplay between the Federal Arbitration Act ("FAA") and the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Ramon Dejesus Cedeno is a participant in the Strategic ESOP (the "Plan"), an employee benefit plan established by Defendant Strategic Financial Solutions, LLC ("Strategic Financial"). He filed this putative class action lawsuit seeking relief on behalf of himself and all other Plan participants for Defendants' alleged violations of ERISA.

The Plan is governed by a written "Plan Document," and since the Plan's creation, the Plan Document has included an arbitration provision. That provision requires Plan participants to pursue all claims under the Plan—including the type of ERISA claims at issue here—in individual arbitration. Through the Plan Document's arbitration procedures, Plaintiff has a full opportunity to pursue all the relief to which he personally may be entitled under ERISA. If Plaintiff could prove his claims on the merits, he would receive through arbitration the amount of any losses his Plan account suffered and his individual share of any profits Defendants improperly obtained. This relief is the same relief that Plaintiff would recover for his individual Plan account if he were to succeed on these claims in federal court. Under the Plan Document's arbitration provision, he is only prohibited from

1

pursuing recovery on behalf of other Plan participants, leaving them free to file their own individual arbitrations with respect to their own Plan accounts if they so choose.

Defendants moved to compel arbitration under the Plan Document's provision and the FAA. They explained that Plaintiff was contractually bound by the provision as a Plan participant and that the FAA requires courts to "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Under *Epic Systems*, Defendants argued, the District Court had to compel individual arbitration of Plaintiff's ERISA claims unless Plaintiff could satisfy his "heavy burden of showing 'a clearly expressed congressional intention'" in ERISA that participants have an *unwaivable* right to bring those claims on a representative, collective, or class basis. *Id.* at 1624 (citation omitted). Satisfying that burden would be the only way to displace the FAA's policy of enforcing the Plan Document's arbitration provision according to its terms.

The District Court denied Defendants' motion. The court did not question whether the arbitration provision is binding as a contractual matter or subject to the FAA, but it still found the provision unenforceable. According to the court, the arbitration provision prevents Plaintiff from trying "to recover for the Plan as a whole," and the right to pursue that recovery is "not waivable." A286.

The District Court's ruling conflicts with controlling FAA and ERISA precedent. The FAA's policy of rigorously enforcing arbitration agreements as written applies with full force to federal statutory claims unless the other federal statute explicitly requires otherwise. This Court held decades ago that ERISA claims are arbitrable: "Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims." *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991). The District Court, however, believed that the Plan's arbitration provision was an impermissible waiver of participants' statutory rights. It drew that idea from "a judge-made exception to the FAA" known as the effective vindication doctrine—which the Supreme Court has recognized in principle but never applied in practice. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235-36 (2013). At least in theory, this exception applies if an arbitration provision "forbid[s] the assertion of certain statutory rights." *Id.* at 236.

That problem is not present here. Plaintiff can fully vindicate his statutory rights in an individualized proceeding. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 (2008). What he cannot do under the arbitration provision is vindicate the rights of *other* Plan participants through aggregation procedures like the class action mechanism invoked in his Complaint. A long, consistent line of Supreme Court decisions recognizes that waiving the right to proceed on a class or collective basis is the sort of contractual agreement that the FAA strongly protects.

3

Nothing in ERISA's language, structure, or purpose suggests a different rule for claims under that statute.

Indeed, two other circuits (the Seventh and Ninth) have already considered this issue and rejected the District Court's interpretation of ERISA. These other circuits recognized, based on *LaRue*, that participants in defined contribution plans do not have an unwaivable right to recover for alleged harms to other plan participants under ERISA. Although the District Court believed that the Seventh Circuit decision supported its approach, the Seventh Circuit in fact endorsed *Defendants'* argument that individualized arbitration is not "inherently incompatible with ERISA." *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021).

This Court should reverse the decision of the District Court and enforce Plaintiff's obligation to arbitrate his claims on an individual basis.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because Plaintiff asserts claims under ERISA. This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(A) and (B) because the District Court's order denied Defendants' motion to compel arbitration and stay the action. The District Court entered its order on November 2, 2021, and Defendants timely

filed their amended notice of appeal on November 24, 2021.  A287-79; *see* Fed. R. App. P. 4(a)(1)(A).

## ISSUE PRESENTED

Whether Plaintiff has an unwaivable right under ERISA § 502(a)(2) to pursue monetary remedies with respect to other participants' Plan accounts, such that a valid arbitration provision in Section 17.10 of the Plan Document should not be enforced, even though the FAA and ERISA, respectively, require enforcement of arbitration provisions and provisions of written plan documents according to their terms.

## STATEMENT OF THE CASE

In the proceedings below, Defendants moved to compel Plaintiff to arbitrate his ERISA claims.  The District Court (Hon. John G. Koeltl) denied Defendants' motion.  *See Cedeno v. Argent Tr. Co.*, No. 20-cv-9987, 2021 WL 5087898, at *1 (S.D.N.Y. Nov. 2, 2021).

## I.    The Employee Retirement Income Security Act

ERISA is "a comprehensive statute for the regulation of employee benefit plans."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  It generally requires employee benefit plan assets to "be held in trust by one or more trustees," and it subjects trustees and other plan fiduciaries to certain fiduciary duties.  *See* 29 U.S.C. §§ 1002(21)(A), 1102(a), 1103(a), 1104(a).

Those fiduciary duties include duties of loyalty and prudence. The duty of loyalty requires action "solely in the interest of the participants and beneficiaries." *Id.* § 1104(a)(1). The duty of prudence requires fiduciaries to use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). ERISA § 409(a) states that fiduciaries are personally liable if they breach their fiduciary duties and must make good any losses they cause to the plan:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

*Id.* § 1109(a).

These obligations are enforceable through a series of rights of action found in ERISA § 502(a). *See id.* § 1132(a). Section 502(a)(1)(B) allows a participant to bring suit "to recover benefits due to him under the terms of his plan." *Id.* § 1132(a)(1)(B). Section 502(a)(2) allows the U.S. Department of Labor or a participant, beneficiary, or fiduciary of a plan to sue "for appropriate relief under [ERISA § 409, the section covering breaches of fiduciary duties]." *Id.* § 1132(a)(2). Section 502(a)(3) allows participants, beneficiaries, and fiduciaries to seek

injunctive or "other appropriate equitable relief" to enforce the relevant statutory provisions or plan terms, or to redress violations of the statute or plan. *Id.* § 1132(a)(3).

## II.   ERISA Retirement Plans

ERISA covers two types of retirement plans:  defined benefit plans and defined contribution plans.

A defined benefit plan "generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation." *LaRue*, 552 U.S. at 250 n.1; *see* 29 U.S.C. § 1002(35).  Participants in defined benefit plans have no "claim to any particular asset that composes a part of the plan's general asset pool." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999).

A defined contribution plan "promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue*, 552 U.S. at 250 n.1; *see* 29 U.S.C. § 1002(34).  In a defined contribution plan, "all of the plan's money is allocable to plan participants," and the "vested benefits are the contents of [each participant's] account:  contributions (from both the participant and employer) plus investment gains minus investment losses and

any allocable expenses." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297, 301 (3d Cir. 2007).

In a lawsuit for breach of fiduciary duty under ERISA §§ 502(a)(2) and 409(a), any monetary remedies would be distributed differently depending on whether the plan is a defined benefit plan or a defined contribution plan. In a defined benefit plan, assets are held in a common pool that is not divided among plan participants. That means that, when bringing suit for alleged harm to the plan, a participant necessarily is suing to recover on behalf of the entire plan. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) ("In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions."). Normally, whether the participant recovers assets for the plan will not affect the benefits the participant receives, which are, as the term "defined benefit" implies, defined by the plan document and do not vary based on the value of assets in the plan. *See id.*

In a defined contribution plan, each participant is only "entitled to whatever assets are dedicated to his individual account." *Hughes Aircraft*, 525 U.S. at 439. If a participant proves a fiduciary breach, the defendant will "restore assets to the plan that are allocable to [that participant's] account," and this recovery "must be paid out to the injured participant in the form of augmented benefit payments." *Graden*,

496 F.3d at 296 n.6, 297.  Participants have no claim to plan assets that are "allocable to other participants."  *Id.* at 301.

## III.    The Strategic ESOP

Strategic Financial established the Plan, effective May 1, 2017.  A56 (§§ 1.01(a), 1.02(a)).  The Plan is an employee stock ownership plan ("ESOP"), a congressionally approved type of defined contribution plan "that invests primarily in the stock of the company that employs the plan participants."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014); 29 U.S.C. § 1107(d)(6)(A); A56 (§ 1.01(b)).  As with other defined contribution plans, Plan participants have individual accounts within the Plan, and the value of the assets within those accounts determine their benefits.  As ERISA requires, the Plan is "established and maintained pursuant to a written instrument."  29 U.S.C. § 1102(a)(1).  Specifically, the Plan is governed by at least two written instruments—a "Plan Document" (A50-115) and the Strategic Employee Stock Ownership Trust (A117-37) (the "Trust Agreement").  Employees of Strategic Financial and certain affiliated companies become participants in the Plan, subject to certain eligibility requirements.  A58-59 (§ 2.01).

The Plan Document contains a section establishing mandatory and binding arbitration (the "Arbitration Procedure").  A105-08 (§ 17.10).  A condition for a participant's receipt of contributions and benefits under the Plan is compliance with the Arbitration Procedure.  A105 (§ 17.10(a)).

9

Under the Arbitration Procedure, claimants must submit Plan-related claims, known as "Covered Claims," to binding arbitration. *Id.* (§ 17.10(b)). The Arbitration Procedure defines Covered Claims as:

> Any claim by a Claimant (<u>i</u>) that arises out of, concerns or relates to the Plan or the Trust, including without limitation, any claim for benefits, (<u>ii</u>) asserting a breach of, or failure to follow, the Plan or Trust; or (<u>iii</u>) asserting a breach of, or failure to follow, any provision of ERISA or the [Internal Revenue] Code, including without limitation claims for breach of fiduciary duty, ERISA section 510 claims, and claims for failure to provide in a timely manner notices or information required by ERISA or the Code[.]

*Id.* (§ 17.10(b)). A "Claimant" is "a Participant, Beneficiary or any other person who believes he may be entitled to benefits under the Plan." A104 (§ 17.09(a)). This arbitration requirement applies "to all Covered Claims, whether asserted solely against one or more of the Plan's fiduciaries or against the Employer or any other non-fiduciary (e.g., a Plan service provider)." A108 (§ 17.10(q)).

In addition, the Trust Agreement provides for mandatory, binding arbitration in accordance with the Arbitration Procedure in the Plan Document:

> Any Covered Claim brought by a Participant, Beneficiary or any other person who believes he may be entitled to benefits under the Plan shall be settled by arbitration in accordance with Section 17.10 of the Plan.

A128 (§ 4.4). In addition to Strategic Financial, Argent is a signatory to the Trust Agreement (in its capacity as "Trustee" to the Plan). A136-37.

Two provisions in the Arbitration Procedure are particularly important here. The first makes clear that arbitration must proceed on an individual basis:

> All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

A105 (§ 17.10(f)). The second addresses the relief available for claims asserted under ERISA § 502(a)(2):

> If a Covered Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

A105-06 (§ 17.10(g)).

The Plan Document provides that the applicability and enforceability of both these provisions are for a federal court to decide, not an arbitrator. A106 (§ 17.10(h)). In addition, both provisions are non-severable, so if a court finds either of them "unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." A106 (§ 17.10(h)).

11

## IV.    Relevant Procedural History

### A.    Plaintiff's Complaint and Allegations

Plaintiff, by virtue of his employment at Strategic Financial, has been a participant in the Plan since it was first established.  A16 (Compl. ¶ 18).  He brought this putative class action alleging that Argent, the Plan's trustee, violated ERISA by causing the Plan to buy shares of Strategic Family, Inc. for more than fair market value.  A13-15 (Compl. ¶¶ 5-13).  In addition, he names Argent in a claim alleging that its engagement agreement with Strategic Financial contains an indemnification provision that violates ERISA and is void as against public policy.  A28, A34-35 (Compl. ¶¶ 80-83, 110-17).  He also claims that three individuals and three limited liability companies are parties in interest who are allegedly liable under ERISA for participating in prohibited transactions and fiduciary breaches.  A14-15 (Compl. ¶¶ 10-11).  Finally, Plaintiff alleges that Defendant Strategic Financial, the Plan's administrator, breached its duty under ERISA to provide certain documents he requested in a timely fashion.  A15 (Compl. ¶ 14).  Plaintiff seeks to represent a class of all participants and beneficiaries of the Plan as of December 28, 2017 (subject to certain exclusions).  A38 (Compl. ¶ 136).

Various counts in Plaintiff's Complaint seek monetary relief under ERISA §§ 502(a) and 409(a), including an order requiring Defendants to make good to the Plan the losses resulting from the alleged fiduciary breaches and to restore to the

Plan any profits Defendants made through the use of Plan assets. A15-16, A31-37, A42. As against Strategic Financial, Plaintiff requests statutory penalties under ERISA § 502(c)(1) for failure to provide the requested documents. A37-38. Plaintiff also seeks various forms of equitable relief and specified declaratory relief. A41.

## B. Defendants' Motion to Compel Arbitration

Defendants moved to compel individual arbitration of Plaintiff's claims under the FAA and the Plan's Arbitration Procedure. A44-46; D. Ct. Dkt. 60. They argued that Plaintiff was bound by the Arbitration Procedure because he participated in the Plan while the Arbitration Procedure was in effect, and that Plaintiff's claims were "Covered Claims" because each alleged an ERISA violation related to the Plan. Plaintiffs' claims were therefore subject to binding individual arbitration, and Plaintiff's potential relief was limited to any alleged losses to Plaintiff's own account only.

Plaintiff opposed Defendants' motion, but he did not dispute either that the Plan Document is a valid written plan document under ERISA, or that all claims in his Complaint fall within the definition of "Covered Claims" in the Plan Document's arbitration provision. D. Ct. Dkt. 65. Rather, he contended that the Arbitration Procedure was unenforceable because the provisions requiring individual arbitration eliminated his allegedly unwaivable right to pursue Plan-wide remedies under

ERISA §§ 502(a)(2) and 409(a). Because those provisions of the Arbitration Procedure are non-severable (per Section 17.10(h) of the Plan Document), Plaintiff argued that the entire Arbitration Procedure was void.

In reply, Defendants reiterated that, under Supreme Court precedent in *LaRue*, a participant in a defined contribution plan (like the Plan) can maintain an action under ERISA § 502(a)(2) and personally recover damages only to remedy losses to that individual's plan account, which matches exactly the damages that Plaintiff would be able to pursue in individual arbitration. D. Ct. Dkt. 68. In addition, Defendants explained that Plaintiff does not have an "unwaivable" right under ERISA § 502(a)(2) to sue for alleged harm to individual accounts for other participants. Defendants also responded to additional arguments that Plaintiff raised in his opposition, which the District Court's opinion did not reach.[1]

The District Court heard oral argument and ultimately denied Defendants' motion. A272-86. The court held that Plaintiff had a right under ERISA §§ 502(a)(2) and 409(a) to seek to recover for the entire Plan and that this right was

---

[1] In addition to his prospective waiver argument, Plaintiff asserted in his opposition that (1) the Arbitration Procedure is an "unlawful exculpatory provision"; (2) the Arbitration Procedure should not apply to Plaintiff because he lacked notice of and did not expressly agree to it; (3) the Arbitration Procedure "prospectively waives ERISA § 404(a) standards"; and (4) the attorneys' fee provision in the Arbitration Procedure "prospectively waives ERISA § 502(g)(1)." D. Ct. Dkt. 65 at 14-21. The District Court did not address these arguments.

"not waivable." A286. Because an individual arbitration requirement in the Plan Document would prevent him from recovering on behalf of other Plan participants' accounts, the District Court concluded that the provision prohibiting his pursuit of that Plan-wide relief was unenforceable under the "effective vindication doctrine." A281-85. Finally, because the Plan Document provides that the individual arbitration provisions in Sections 17.10(f) and (g) are each a "material and non-severable term of the Arbitration Procedure," the District Court's conclusion that they were void led the court to hold that the entire Arbitration Procedure was unenforceable. A285-86.

## SUMMARY OF ARGUMENT

Plaintiff is bound by an arbitration agreement in the Plan Document, the binding legal contract required by ERISA that establishes and defines Plan participants' rights and responsibilities. It is undisputed that this arbitration agreement covers ERISA claims, including all the claims Plaintiff asserts here. The question is whether the arbitration agreement is enforceable when it requires arbitration on an individualized basis and thus limits participants to individualized recoveries with respect to their own Plan accounts. The answer to the question is yes, because defined contribution plan participants have no unwaivable right to try to recover anything more.

The FAA requires courts to enforce arbitration agreements rigorously according to their terms. That is true even where the arbitration agreement requires arbitration of ERISA claims, as this Court has held. *Bird*, 926 F.2d at 122. It is true, as well, where the arbitration agreement requires arbitration on an individualized basis, as a long line of Supreme Court cases makes plain. Under those cases, courts "must be alert to new devices and formulas" that a plaintiff might propose to declare "individualized arbitration proceedings off limits" in a particular setting. *Epic Sys.*, 138 S. Ct. at 1623. That is just what Plaintiff attempts here based on mischaracterizations of ERISA's unique remedial framework.

The District Court erroneously embraced one of these "new devices and formulas." It applied a theoretical exception to the FAA, which the Supreme Court has never applied, to conclude that the Plan's arbitration agreement improperly requires "prospective waiver" of participants' statutory rights such that Plaintiff could no longer effectively vindicate his ERISA rights.

The District Court's holding is wrong. It ignores the difficult showing that Plaintiff had to make to invoke this exception. Plaintiff needed to demonstrate that the FAA's strong support for enforcing arbitration agreements is in irreconcilable conflict with ERISA's remedial framework. The District Court manufactured a purported conflict by misreading ERISA §§ 502(a)(2) and 409(a) as giving participants an unwaivable right to pursue recovery on behalf of all other plan

16

participants as well as themselves. Nothing in either statutory provision creates such a right, let alone with the clarity needed for ERISA to override the usual operation of the FAA. The District Court's determination to the contrary rests on a misreading of the Supreme Court's ERISA precedents.

The District Court should have recognized that there is no conflict at all between enforcing the Arbitration Procedure and Plaintiff's substantive statutory rights under ERISA. An agreement to arbitrate claims under ERISA §§ 502(a)(2) and 409(a) on an individual basis is not incompatible with ERISA in any way. The Supreme Court has held that plan participants may pursue such claims on a purely individualized basis. *LaRue*, 552 U.S. at 250. The Seventh and Ninth Circuits have recognized, based on *LaRue*, that any right a plan participant may have to seek remedies on behalf of other participants' accounts under ERISA §§ 502(a)(2) and 409(a) is waivable. Plaintiff is bound by an agreement to pursue his claims through individualized arbitration, and this Court should uphold that agreement as the FAA requires.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to compel arbitration de novo. *E.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017).

## ARGUMENT

The District Court erroneously held that Plaintiff should not be compelled to arbitrate his claims on an individual basis because he "has the right under §§ 409(a) and 502(a)(2) to recover for the Plan as a whole" and "[t]hat right is not waivable." A286. This Court should reverse the District Court's holding because it undermines bedrock principles of the FAA and ERISA and conflicts with Supreme Court precedent on the enforceability of individual arbitration provisions.

## I. This Case Satisfies All the Requirements for Compelling Arbitration.

When deciding whether to compel arbitration, courts must consider (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement," and (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citation omitted); *see also, e.g.*, *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012). All three requirements are met here, and the District Court did not find otherwise.

As for the first requirement, the parties agreed to arbitrate. Their agreement to do so is embodied in the Plan Document, which is no less binding under ERISA than any other contract. *See, e.g.*, *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) ("Courts construe ERISA plans, as they do other contracts . . . ."). Indeed, the Plan Document is the source of Plaintiff's ERISA rights. ERISA requires employee benefit

18

plans to "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). These written instruments, known as plan documents, govern plan participants' rights and obligations. *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (noting that ERISA has "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, [which] is built around reliance on the face of written plan documents").[2]

The Plan Document unambiguously requires Plaintiff to arbitrate this dispute. He alleges that he "is and has been a Plan participant . . . since the adoption of the Plan effective on May 1, 2017." A16 (Compl. ¶ 18). From the beginning, the Plan Document has clearly stated that a condition of participating in the Plan and receiving contributions and benefits is "be[ing] bound by the provisions of . . . Section 17.10 (the 'Arbitration Procedure') to resolve all Covered Claims (as defined in Section 17.10(b))." A105 (§ 17.10(a)); *see also* A128 (§ 4.4). Plaintiff, as a Plan participant, is bound by this provision. *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510,

---

[2]  Although the District Court did not address the issue, the parties disagreed below about what body of law (*i.e.*, state or federal law) applies to determine whether the parties agreed to arbitrate through an ERISA plan document. *See* D. Ct. Dkt. 65 at 6-7; D. Ct. Dkt. 68 at 7 n.6. Because ERISA aims to create uniform national standards for ERISA-covered plans, federal law properly applies to this question, consistent with ERISA's clear and broad preemption of conflicting state law. *See* 29 U.S.C. § 1144(a); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998) (holding that, when interpreting ERISA plan terms, courts do not apply "any particular state's contract law, but rather . . . a body of federal common law tailored to the policies of ERISA").

512 (9th Cir. 2019) ("*Dorman II*")[3] ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect.").

As for the second requirement, each of Plaintiff's claims falls within the scope of the arbitration provision.  Section 17.10(b) defines "Covered Claims" as:

> [a]ny claim by a Claimant (<u>i</u>) that arises out of, concerns or relates to the Plan or the Trust, including without limitation, any claim for benefits, (<u>ii</u>) asserting a breach of, or failure to follow, the Plan or Trust; or (<u>iii</u>) asserting a breach of, or failure to follow, any provision of ERISA or the [Internal Revenue] Code, including without limitation claims for breach of fiduciary duty, ERISA section 510 claims, and claims for failure to provide in a timely manner notices or information required by ERISA or the Code.

A105 (§ 17.10(b)).  It is undisputed that each of Plaintiff's claims alleges "a breach of, or failure to follow, [a] provision of ERISA" and, therefore, meet the arbitration provision's definition of "Covered Claims."

As for the third requirement, Plaintiff's Complaint alleges "federal statutory claims" under ERISA, but there is no argument that "Congress intended [ERISA] claims to be nonarbitrable." *JLM Indus.*, 387 F.3d at 169 (citation omitted).  Just the

---

[3]   *Dorman II* represents the second of two concurrently issued opinions in that case addressing whether the district court erred in refusing to enforce the arbitration provision contained in the governing Schwab Retirement Savings and Investment Plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (known as *Dorman I*), the Ninth Circuit not only reversed the district court but also relied on intervening Supreme Court case law to overrule its prior precedent, *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984), which had held that ERISA claims were not arbitrable.

opposite, this Court has long held that parties may agree to arbitrate ERISA claims. In *Bird*, this Court analyzed ERISA comprehensively in light of the Supreme Court's decisions on the arbitrability of federal statutory claims and found that "ERISA's text and legislative history do not support a conclusion that Congress intended to preclude arbitration of [ERISA] claims." 926 F.2d at 118-20.

This case therefore satisfies all the requirements for arbitration. The sole basis for the District Court's decision to deny Defendants' motion to compel arbitration was its erroneous holding that Section 17.10(g) in the Plan Document is unenforceable because Plaintiff has an unwaivable right under ERISA §§ 502(a)(2) and 409(a) to recover for the Plan as a whole (including with respect to other Plan participants' accounts). For the reasons that follow, this Court should reject the District Court's holding and reverse its denial of Defendants' motion.

## II. The FAA and ERISA Require Enforcement of the Arbitration Provision in the Plan Document According to Its Terms.

It is undisputed that the Plan Document unambiguously requires arbitration of Plaintiff's ERISA claims on an individual basis. Under both the FAA and ERISA, this Plan Document provision must be enforced according to its terms.

"Congress enacted the FAA in response to widespread judicial hostility to arbitration." *Italian Colors*, 570 U.S. at 232. This Court has noted that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*,

460 F.3d 231, 234 (2d Cir. 2006) (citation omitted). Among other things, this policy "requires [this Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).

The FAA requires courts to "'rigorously enforce' arbitration agreements according to their terms." *Italian Colors*, 570 U.S. at 233 (citation omitted). That includes "terms that specify *with whom* the parties choose to arbitrate their disputes." *Epic Sys.*, 138 S. Ct. at 1621 (citation omitted). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citation omitted).

ERISA requires the same result. When Congress enacted ERISA, a primary goal was to encourage voluntary formation of employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Plan sponsors (*i.e.*, employers) have "large leeway to design [employee benefit plans] as they see fit." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (citation omitted). If employers cannot be confident that their benefit plans will be enforced as written, they are likely to be dissuaded from offering benefits at all, to the detriment of their employees and in contravention of Congress's express goals. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) ("For us to sanction informal 'plans'

. . . would leave the law of employee benefits in a state of uncertainty and would create disincentives for employers to offer benefits in the first place.").

For this reason, ERISA requires that plans "be established and maintained pursuant to a written instrument" and that certain details be addressed in that written instrument. 29 U.S.C. § 1102. The written plan instrument, commonly known as the plan document, "is at the center of ERISA." *US Airways*, 569 U.S. at 101; *see also Curtiss-Wright Corp.*, 514 U.S. at 83 (ERISA's statutory scheme is "built around reliance on the face of written plan documents"). As a result, "unambiguous language in a plan is enforced according to its terms." *Balestracci v. NSTAR Elec. & Gas Corp.*, 449 F.3d 224, 230 (1st Cir. 2006).

The District Court's holding departs from these bedrock principles. Defendants seek to enforce an unambiguous arbitration provision that appears in a written plan document governed by ERISA. There is no dispute that the Plan Document is valid and that the arbitration provision in Section 17.10 unambiguously requires Plaintiff to arbitrate all claims raised in his Complaint on an individual basis. Both the FAA and ERISA therefore required the District Court to enforce Section 17.10 according to its terms and grant Defendants' motion to compel arbitration. The District Court's refusal to enforce a clear arbitration provision conflicts with both the FAA and ERISA.

III.    The District Court Erred in Holding That ERISA Creates an
        Unwaivable Right to Pursue Recovery for Other Plan Participants.

The District Court grounded its ruling on the requirement in Section 17.10 that Plaintiff arbitrate his claims on an individual basis, precluding him from recovering monetary relief for other Plan participants and the Plan as a whole.  A286.  The District Court held that the right to a Plan-wide recovery is "not waivable."  *Id.*  That holding conflicts with a wealth of controlling FAA and ERISA precedent.

As part of the FAA's requirement that courts "'rigorously enforce' arbitration agreements according to their terms," *Italian Colors*, 570 U.S. at 233, the Supreme Court has consistently directed courts to uphold agreements to arbitrate on an individual basis.  A long series of Supreme Court rulings, involving a variety of statutory rights, recognizes that agreements to waive the ability to pursue claims in an aggregated manner—such as through a representative, class, or collective action— must be enforced under the FAA.  *See, e.g.*, *Epic Sys.*, 138 S. Ct. at 1627-28 (collecting cases); *Italian Colors*, 570 U.S. at 233 (upholding individual arbitration of antitrust claims); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (invalidating state law that required availability of class-wide arbitration and enforcing class arbitration waiver); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (upholding individual arbitration of age discrimination claims brought under the Age Discrimination in Employment Act).  The same result is warranted here.

**A.    The Theoretical "Effective Vindication" Exception Does Not Support Plaintiff's Efforts to Avoid Individualized Arbitration.**

The Supreme Court first referred to the concept that would come to be known as the "effective vindication doctrine" in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985).  Although the *Mitsubishi Motors* Court enforced the arbitration agreement in that case, it stated in footnote *dictum* that if the contract's arbitration provision "operated in tandem" with the agreement's choice of foreign law "as a prospective waiver of a party's right to pursue [federal] statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy."  *Id.* at 637 n.19; *see also Italian Colors*, 570 U.S. at 235 (recognizing that this passage in *Mitsubishi Motors* was "dictum").

In *Italian Colors* in 2013, the Supreme Court again addressed the "effective vindication doctrine," which it described as a "judge-made exception to the FAA."  570 U.S. at 235.  The Supreme Court noted that, in the decades since *Mitsubishi Motors*, it had never applied the doctrine to invalidate an arbitration agreement,[4] and

---

[4]    The District Court cited *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974), as an example of a case in which the Supreme Court "invalidated contractual provisions that purported to waive statutory rights."  A282.  That was incorrect: the Supreme Court has repeatedly explained that *Gardner-Denver* "did *not* involve the issue of the enforceability of an agreement to arbitrate statutory claims" because the employees in that case "had not agreed to arbitrate their statutory claims."  *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 264 (2009) (emphasis added) (quoting *Gilmer*, 500 U.S. at 35).  Rather, *Gardner-Denver* "involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims."  *Id.* (quoting

it declined to do so in that case as well. *Id.* Although the *Italian Colors* Court stated that the doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," it made clear that arbitration agreements that limit prospective plaintiffs to individualized arbitration do not meet that description:

> The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938.

*Id.* at 236. The Court noted, moreover, that it had previously rejected an attempt to use the effective vindication doctrine to challenge "a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions." *Id.* at 237 (citing *Gilmer*, 500 U.S. at 32).

### B. *Epic Systems* Requires a "Clearly Expressed Congressional Intention" to Forbid Individualized Arbitration.

If its prior precedent were not enough, any doubt regarding the Supreme Court's resolve to enforce individual arbitration agreements was put to rest in *Epic*

---

*Gilmer*, 500 U.S. at 35). As another court recently observed, the rarity with which the effective vindication doctrine has been imposed is a strong reason for enforcing individual arbitration of ERISA claims. *See Holmes v. Baptist Health S. Fla., Inc.*, No. 21-cv-22986, 2022 WL 180638, at *3 (S.D. Fla. Jan. 20, 2022) ("Given the FAA's pro-arbitration policy, as well as the rarity with which courts apply the effective vindication doctrine, the Court . . . holds that the arbitration agreement at issue is valid and enforceable.").

*Systems* in 2018. The Supreme Court underscored that, "[i]n many cases over many years," the "Court has heard and rejected efforts to conjure conflicts between the [FAA] and other federal statutes." *Epic Sys.*, 138 S. Ct. at 1627. Not a single effort of this sort has succeeded. *Id.* Supreme Court precedent showed that an agreement "to use individualized rather than class or collective action procedures" is something that the FAA "seems to protect pretty absolutely." 138 S. Ct. at 1621. The Supreme Court even warned that lower courts "must be alert to new devices and formulas" that would undercut this FAA protection by "declar[ing] individualized arbitration proceedings off limits." *Id.* at 1623.[5]

The *Epic Systems* plaintiffs, like Plaintiff here, argued that enforcing an individual arbitration agreement was an impermissible "prospective waiver" of a federal statutory right under the effective vindication doctrine discussed in *Italian Colors* and *Mitsubishi Motors*. *See, e.g.*, Brief for the Respondent at 8, 35, 44-47,

---

[5] *Epic Systems* refutes the District Court's reliance on the FAA's "savings clause," which allows courts to decline to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract." A285 (quoting 9 U.S.C. § 2). The District Court found that this provision applied based on the "general principle of contract law" that a contractual provision "is invalid if it is contrary to law." *Id.* In *Epic Systems*, however, the plaintiffs (and dissent) made the same argument that the arbitration provisions there were "illegal" because requiring individualized arbitration conflicted with other federal statutes. 138 S. Ct. at 1622-23. The Supreme Court held that, while illegality "may be a traditional, generally applicable contract defense in many cases, . . . an argument that a contract is unenforceable *just because it requires bilateral arbitration* is a different creature" that "impermissibly disfavors arbitration." *Id.* at 1623.

*Epic Sys.*, 138 S. Ct. 1612 (No. 16-285), 2017 WL 3475520. The federal statutory right in *Epic Systems* came from § 7 of the National Labor Relations Act ("NLRA"), which protects workers' right "to engage in . . . concerted activities for . . . mutual aid or protection." *Epic Sys.*, 138 S. Ct. at 1624 (quoting 29 U.S.C. § 157). The plaintiffs contended that this provision created an unwaivable substantive right to engage in representative litigation on behalf of other similarly situated parties.

The Supreme Court said no. It emphasized that demonstrating that another federal statute "overrides" the FAA's usual enforcement scheme is an argument that always faces "a stout uphill climb," and it recognized that such statutory language could "displace" the FAA's rigorous enforcement of arbitration agreements according to their terms only if that language expressed "*a clearly expressed congressional intention*" to do so. *Id.* (emphasis added). The Court emphasized, moreover, that "when Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so." *Id.* at 1626. Because NLRA § 7 "does not express approval or disapproval of arbitration" and "does not mention class or collective action procedures," the Court saw no evidence—much less "clear and manifest" evidence— that the NLRA meant to override the FAA's requirement to enforce class and collective action waivers. *Id.* at 1624.

*Epic Systems* clarifies the applicable standard for Plaintiff's argument and emphasizes how difficult that standard is to meet. Because the FAA requires

enforcing arbitration agreements according to their terms, any argument that a later statute is unsuited for individualized arbitration effectively requires plaintiffs to prove that the later statute partially *repealed* the FAA by implication. *Id.* at 1624. That sort of argument triggers the "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Id.* (citations, quotation marks, and brackets omitted).

### C. ERISA Contains No Clearly Expressed Congressional Intention to Prohibit Agreements to Engage in Individualized Arbitration.

Under *Epic Systems*, to show that Congress intended ERISA to preclude the ordinary operation of the FAA—*i.e.*, that the provisions of Section 17.10 of the Plan Document requiring individual arbitration of ERISA § 502(a)(2) claims should not be enforced according to their terms—the District Court would have needed to find that Plaintiff satisfied a "heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." 138 S. Ct. at 1624 (citation omitted). The District Court committed legal error by failing to apply this standard. Had it applied the correct standard, it would have found that ERISA not only lacks any clearly expressed congressional intention to prohibit individualized arbitration, but shows the *opposite* intention.

29

### 1. Congress Made Clear That ERISA Does Not Override Any Other Federal Statutes.

Congress made explicit in ERISA § 514(d) that the statute does not override other federal laws: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). This language on its own precludes any inference that ERISA limits the usual force of the FAA.

Indeed, the Supreme Court has construed § 514(d) as preventing ERISA from causing "a disruption of the enforcement scheme contemplated by" another federal statute. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102 (1983); *cf. Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986) (applying § 514(d) to a federal labor statute providing for arbitration procedures in union pension plans and observing that "ERISA does not abrogate the equal representation mandates of the Taft-Hartley Act"). By the same reasoning, ERISA cannot "modify" or "impair" the FAA's scheme for enforcing arbitration agreements according to their terms. Thus, far from containing a clear expression of Congress's intent to prohibit individualized arbitration agreements, ERISA establishes that the statute must not be read to supersede the provisions of the FAA.

### 2. The Plain Language of ERISA §§ 502(a)(2) and 409(a) Does Not Prohibit Agreements for Individualized Arbitration.

The District Court fundamentally misconstrued ERISA §§ 502(a)(2) and 409(a) as giving plan participants a "not waivable" statutory right "to recover for the Plan as a whole." A277-81. Inherent in the District Court's holding was the conclusion that this "right" allegedly created under ERISA §§ 502(a)(2) and 409(a) must trump the FAA and its policy requiring enforcement of the parties' individualized arbitration provision in Section 17.10 of the Plan Document according to its terms. The District Court's holding is erroneous because neither ERISA provision contains a "clearly expressed congressional intention" to displace the FAA or even refers to the FAA or individualized arbitration.

ERISA §§ 502(a)(2) and 409(a) work in tandem: "Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans." *LaRue*, 552 U.S. at 251. Neither provision actually creates a right to engage in legal proceedings on a group basis, much less an unwaivable one. Just as in *Epic Systems*, the statutory provisions at issue do not hint at disapproval of arbitration, do not even mention group legal procedures, and stand in stark contrast to the unequivocal language Congress has used in other statutes to qualify the usual operation of arbitration agreements. *See Epic Sys.*, 138 S. Ct. at

1624, 1626 ("[W]hen Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so.").[6]

Moreover, of the two ERISA provisions, § 502(a)(2) is the only one that is phrased in terms of a participant's rights. Section 502(a)(2) provides that a civil action may be brought by an individual participant or beneficiary "for *appropriate relief* under section 409" (emphasis added). This provision does not say *what* relief is "appropriate" under § 409 or what the scope of such relief should be. It certainly does not say that participants or beneficiaries can always bring civil actions for "plan-wide relief"—much less that they can do so when a plan obligates them to proceed individually.

Nor does ERISA § 409 say that. Unlike § 502(a)(2), it does not speak in terms of a prospective plaintiff's rights at all. It instead describes consequences to a breaching fiduciary—*i.e.*, that the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets

---

[6] In *Epic Systems* the Supreme Court cited several federal statutes to illustrate that Congress "knows how to override the [FAA] when it wishes—by explaining, for example, that, '[n]otwithstanding any other provision of law, . . . arbitration may be used . . . only if' certain conditions are met, 15 U.S.C. § 1226(a)(2); or that '[n]o predispute arbitration agreement shall be valid or enforceable' in other circumstances, 7 U.S.C. § 26(n)(2); 12 U.S.C. § 5567(d)(2); or that requiring a party to arbitrate is 'unlawful' in other circumstances yet, 10 U.S.C. § 987(e)(3)." *Epic Sys.*, 138 S. Ct. at 1626.

of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). Under this provision, a fiduciary is liable *to the plan* for the full amount of losses the plan suffered as a result of the fiduciary's breach of duty, as well as the full gain that the fiduciary improperly obtained through the misuse of plan assets. Merely creating this liability does not address whether, or in what circumstances, one individual participant may obtain recovery of the fiduciary's full liability to the plan.

Even if these sections could somehow be construed as creating a statutory mechanism for participants to obtain recovery for the plan as a whole, the sections still would not establish that such plan-wide procedures could not be waived by a provision in a written ERISA plan document that requires individualized arbitration. Even with statutes that provide a "right" to collective litigation, a consistent line of Supreme Court decisions has allowed plaintiffs to waive that right through provisions requiring individualized arbitration of their statutory claims.

For example, the Age Discrimination in Employment Act ("ADEA") "expressly permitted collective actions." *Italian Colors*, 570 U.S. at 237 (citing *Gilmer*, 500 U.S. at 32); *see also* 29 U.S.C. § 216(b); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively."). The relevant

33

statutory provision even states that it provides a "right" to bring a collective action on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). Even so, the Supreme Court concluded that the existence of a statutory "right" to collective proceedings does not preclude such a right from being waived. *Gilmer*, 500 U.S. at 32; *see also Epic Sys.*, 138 S. Ct. at 1626 (discussing *Gilmer* and circuit court consensus on FLSA collective actions).

That conclusion applies with even greater force for actions under ERISA §§ 502(a)(2) and 409(a). Unlike the ADEA, neither of these ERISA provisions creates an express "right" to collective action. But even if they did create such a right, they still would not establish, as the District Court mistakenly believed, that the right cannot be waived by a provision in an ERISA plan requiring individualized arbitration.

Here, Plaintiff has accepted contributions to his Plan account and claims he is entitled to retirement benefits under a defined contribution plan containing provisions that waive participants' rights under ERISA §§ 502(a)(2) and 409(a) to remedy alleged fiduciary breaches through collective or representative action. In particular, the Plan provides that any losses and profits that a breaching fiduciary would owe under Section 409(a) must be sought and recovered by each plan participant pursuing individual arbitration with respect to their individual accounts. In the aggregate, this

would impose complete liability on the fiduciary under § 409(a) and afford complete relief to the Plan and its participants.[7]

### 3. Governing Precedent Confirms That the Right to Bring Suit Under ERISA §§ 502(a)(2) and 409(a) on Behalf of Other Plan Participants May Be Waived.

The District Court's understanding of ERISA §§ 502(a)(2) and 409(a) also conflicts with the Supreme Court's jurisprudence on defined contribution plans, as two appellate courts have recently concluded.

In *LaRue*, the Supreme Court held that a participant in a defined contribution plan may bring claims under §§ 502(a)(2) and 409(a) to seek to remedy harm to the participant's own individual plan account only, even if such harm did not affect the larger plan as a whole. The *LaRue* plaintiff was a participant in a 401(k) plan, which, like the Plan here, is a form of defined contribution plan. *LaRue*, 552 U.S. at 250-51. The plaintiff directed the plan fiduciary to make certain changes to his individual account, which the fiduciary allegedly failed to do, and the plaintiff claimed that the "omission 'depleted' his interest in the Plan by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA." *Id.* at 251. The fiduciary's alleged omission affected no one else's plan account but the individual plaintiff's. *Id.*

---

[7] The prospect that it may not be economical for each participant to pursue the losses to his or her individual account does not provide an appropriate basis for invalidating an arbitration provision. *See Italian Colors*, 570 U.S. at 236 ("[T]he fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy.").

at 250.  The Fourth Circuit had held that the plaintiff failed to state a claim under ERISA § 502(a)(2), but the Supreme Court reversed.  *Id.* at 252.  In doing so, the Supreme Court definitively explained how § 502(a)(2) should be interpreted in the context of a defined contribution plan.

The District Court here, however, misunderstood *LaRue* and erroneously relied on the Supreme Court's earlier ruling in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 136 (1985).[8]  In *Russell*, the Supreme Court rejected an attempt by a beneficiary of a disability plan (which provided a defined benefit) to use ERISA § 502(a)(2) to obtain consequential or punitive damages, as opposed to the benefits she was contractually owed under the terms of her plan.  The Supreme Court reached this conclusion because the language of § 409(a) focuses on "the relationship between the fiduciary and the plan as an entity."  *Id.* at 140.  In the Court's eyes, that focus precluded an award of consequential damages to the individual plaintiff because it would be "an entirely new *class* of relief available to entities other than the plan."  *Id.* at 142.  Read as a whole, the *Russell* Court explained, § 409 does not "authorize any relief except for the plan itself" and, because the plaintiff sought consequential

---

[8]  The District Court stated, mistakenly, that "[t]he defendants rely on the Supreme Court's decisions in *Russell* and *LaRue* to argue that the plaintiff cannot obtain Plan-wide relief."  A278.  In fact, Defendants explained that *Russell* is "inapposite" to this case.  D. Ct. Dkt. 68 at 3.

damages to remedy her individual harm, rather than harm to the plan, such relief was unavailable under §§ 409 and 502(a)(2).  *Id.* at 144.

In drawing that conclusion, however, the *Russell* Court used language that would later cause significant confusion.  It stated that the drafters of § 409 "were primarily concerned . . . with remedies that would protect *the entire plan*, rather than with the rights of an individual beneficiary."  *Id.* at 142. (emphasis added).  In the same vein, the Court suggested that a § 409(a) recovery "inures to the benefit of *the plan as a whole*," *id.* at 140 (emphasis added), and that § 502(a)(2) actions are "brought in a representative capacity on behalf of *the plan as a whole*."  *Id.* at 142 n.9 (emphasis added).

The Supreme Court cleared up the confusion in *LaRue*.  It clarified that this "entire plan" and "plan as a whole" language made some sense in *Russell* only because the Court was analyzing a *defined benefit* plan with a common pool of assets.  *LaRue*, 552 U.S. at 254-55.  The Court thus explained that *Russell*'s earlier observations about ERISA §§ 502(a)(2) and 409(a) should not be extended to the distinct context of *defined contribution* plans (like the Plan here) with individual accounts.  *Id.* at 256.  In *LaRue* itself, the Fourth Circuit had construed these passages from *Russell* as *foreclosing* an individual participant's ability to recover losses to his own individual account within a defined contribution plan.  *LaRue*, 552 U.S. at 250.  Specifically, the Fourth Circuit had read *Russell* as holding that § 502(a)(2) "provides remedies only

for entire plans" and that recovery must "inure to the benefit of the plan *as a whole*, not to particular persons with rights under the plan." *Id.* (citation, quotation marks, and brackets omitted).

The Supreme Court disagreed. It focused on *Russell*'s specific factual and historical context and explained that *Russell*'s treatment of § 502(a)(2) claims is inapplicable to defined contribution plans: "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans," when "the defined benefit plan was the norm of American pension practice." *Id.* at 254-55 (citation and brackets omitted). "That landscape has changed," however, because "[d]efined contribution plans dominate the retirement plan scene today." *Id.* The Supreme Court clarified once and for all that *Russell*'s "entire plan" language "appears nowhere in § 409 or § 502(a)(2)" and simply "does not apply to defined contribution plans." *Id.* at 256. That language instead addresses "the impact of § 409 on plans that pay defined benefits," like the defined benefit disability plan in *Russell*. *Id.* at 255.[9]

---

[9] Before *LaRue*, this Court applied the "entire plan" and "plan as a whole" language from *Russell* to a defined contribution plan. *Coan v. Kaufman*, 457 F.3d 250, 259, 261 (2d Cir. 2006). Specifically, *Coan* read *Russell* as implying that a defined contribution plan participant cannot bring a § 502(a)(2) claim except in a "representative capacity" with "procedures to protect effectively the interests they purport to represent." *Id.* at 259 (quoting *Russell*, 473 U.S. at 142 n.9). For two reasons, *Coan* does not support invalidating the individual arbitration provisions in the Plan Document. First, *Coan* predates *LaRue* and did not have the benefit of the Supreme Court's clarification that the "entire plan" language

The District Court acknowledged *LaRue*'s clarification that the "entire plan" language from *Russell* is inapplicable in cases (like this one) involving defined contribution plans. A280 n.2. Yet the court dismissed the relevance of that clarification because it "did not imply that a participant who suffered losses in an account in a defined contribution plan could not seek plan-wide relief for the breach of fiduciary duties that brought about the loss to the individual account." *Id.* That misses the point. The pivotal question here is whether anything in ERISA clearly and manifestly creates an unwaivable right to pursue relief on behalf of the entire plan rather than just on behalf of one's own individual account. The District Court held that the statute creates such an unwaivable right, *see* A272, A279-80, but its holding cannot be squared with *LaRue*. The Supreme Court held there that a participant in a defined contribution plan can state a viable ERISA § 502(a)(2) claim to remedy alleged harm that only affects to that participant's individual account (rather than the plan as a whole). *LaRue*, 522 U.S. at 256. That form of proceeding is precisely what

---

from *Russell* is inapplicable to defined contribution plans. *LaRue*, 552 U.S. at 256. Second, *Coan*'s concern that an individual participant might not adequately represent absent participants is not implicated when the participant is bringing an individual arbitration that, under the terms of the Plan Document, cannot affect the value of other participants' accounts.

Plaintiff can seek in individual arbitration under Section 17.10 of the Plan Document. Nothing in the Plan Document waives his right to seek that individual remedy.[10]

Indeed, multiple appellate courts have already recognized in light of *LaRue* that the plan document for an ERISA defined contribution plan can waive a participant's ability to bring suit under § 502(a)(2) on behalf of other participants to recover for the whole plan all at once. The Ninth Circuit, for instance, held that a plan document's "waiver of class-wide and collective arbitration must be enforced according to its terms." *Dorman II*, 780 F. App'x at 514. The court observed that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, [*LaRue*] recognized that such claims are inherently individualized when brought in the context of a defined contribution plan." *Id.* Because "a defined contribution plan participant can bring a § 502(a)(2) claim for the plan losses in her own individual account," courts should enforce agreements to arbitrate such claims "on an individualized basis." *Id.*

---

[10] The District Court correctly recognized that *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), does not support Plaintiff's attempt to avoid arbitration. A282 n.4. In *Cooper*, this Court suggested in *dicta* that, had the arbitration provision in that case covered the ERISA claims at issue, there might have been some "tension" between requiring individual arbitration of § 502(a)(2) claims and following *Coan*'s requirement that a § 502(a)(2) plaintiff must demonstrate that she would represent absent plan participants adequately. *Cooper*, 990 F.3d at 184-85. There is no "tension" here because, as discussed in footnote 9, *supra*, *Coan*'s concern about protecting absent participants is not implicated in an arbitration that can only affect Plaintiff's own account. In any event, *LaRue*'s guidance since *Coan* dispels any doubt about whether § 502(a)(2) permits individualized proceedings for defined contribution plans.

More recently, the Seventh Circuit observed—consistent with *Dorman II*—that requiring "individualized arbitration" (through a class or collective action waiver) is not "inherently incompatible with ERISA." *Smith*, 13 F.4th at 622. As *LaRue* said, § 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account." *Id.* (citation omitted). The Seventh Circuit also rejected the plaintiff's reliance on *Russell* because the *Smith* case, unlike *Russell*, involved a defined contribution plan. *Id.* at 622 & n.6 (disclaiming reliance on *Russell*'s statement that § 502(a)(2) actions are "*brought in a representative capacity* on behalf of the plan as a whole" (citation omitted)).

Here, the District Court misinterpreted *Smith* and *Dorman II*. In the District Court's view, *Smith* rejected *Dorman II*'s reading of *LaRue* and supported Plaintiff's arguments. A282-83 & n.5. Not so: both appellate courts recognized that *LaRue* would permit plan provisions that restrict participants to individualized arbitrations and recoveries. Indeed, the Seventh Circuit said it saw "no conflict" between its decision and *Dorman II*. *Smith*, 13 F.4th at 623. Although *Smith* ultimately affirmed the denial of a motion to compel arbitration, it did so for a reason that has no bearing whatsoever on this case. The Seventh Circuit construed the arbitration provision there as prohibiting a plan participant from seeking the specific remedy of removal of the plan's fiduciaries. *Id.* at 621; *see also id.* at 622 (emphasizing the complaint's "prayer for relief," which requested "that the district court remove [the] plan trustee" or

41

"appoint a new independent fiduciary"). That concern is not relevant here because Plaintiff does not request such relief in his Complaint—presumably because Argent is no longer Plan trustee and therefore cannot now be removed. *See* A17 (alleging that Argent was replaced as Plan trustee effective October 31, 2019).

Contrary to the District Court's suggestion, Defendants' interpretation of ERISA and *LaRue*, which *Dorman II* and *Smith* share, does not imply that defined contribution plan participants can *never* proceed on behalf of the entire plan. The District Court mischaracterized Defendants' position when it observed that "[t]he defendants argue that a participant in a defined contribution plan does not have the statutory right to seek plan-wide relief and is limited to relief for that participant's individual account." A277. Defendants do not argue that individual plan participants can *never* seek recovery on behalf of other Plan participants under ERISA §§ 502(a)(2) and 409(a). Rather, Defendants contend (in accordance with the Ninth and Seventh Circuits' holdings) that such a right can be waived. It has been waived here by a valid provision in the Plan Document, and that waiver must be enforced.

## CONCLUSION

For all these reasons, this Court should reverse the District Court's denial of Defendants' motion to compel arbitration and remand with instructions to compel Plaintiff to arbitrate his claims, on an individual basis, and stay this matter while arbitration is pending.

Dated: March 4, 2022                          Respectfully submitted,

s/ Lars C. Golumbic                           s/ Jeremy P. Blumenfeld

Lars C. Golumbic                              Jeremy P. Blumenfeld
Michael J. Prame                              Margaret M. McDowell
Sarah M. Adams                                Jared R. Killeen
Paul J. Rinefierd                             Antonia M. Moran
GROOM LAW GROUP, CHARTERED                    MORGAN, LEWIS & BOCKIUS LLP
1701 Pennsylvania Avenue, NW,                 1701 Market Street
 Suite 1200                                   Philadelphia, PA 19103
Washington, DC 20006                          (215) 963-5000
(202) 857-0620

Counsel for Argent Trust Company              Michael E. Kenneally
                                              MORGAN, LEWIS & BOCKIUS LLP
                                              1111 Pennsylvania Avenue, NW
                                              Washington, DC 20004
                                              (202) 739-3000

                                              Counsel for Ryan Sasson, Daniel
                                              Blumkin, Ian Behar, Duke Enterprises
                                              LLC, Twist Financial LLC, Blaise
                                              Investments LLC, and Strategic
                                              Financial Solutions, LLC

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because it contains 10,429 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, Times New Roman 14-point font.

Dated:  March 4, 2022                    *s/ Jeremy P. Blumenfeld*
                                         Jeremy P. Blumenfeld