# 21-2891

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

Ramon Dejesus Cedeno,

*Plaintiff-Appellee*,

v.

Ryan Sasson, Argent Trust Company, Daniel Blumkin, Ian Behar, Strategic Financial Solutions, LLC, Duke Enterprises LLC, Twist Financial LLC, Blaise Investments LLC,

*Defendants-Appellants*.

---

Appeal from the United States District Court for the Southern District of New York
(No. 20-cv-9987, Hon. John G. Koeltl)

---

### APPELLEE'S BRIEF

---

Tillman J. Breckenridge
STRIS & MAHER LLP
1717 K Street, NW, Suite 900
Washington, DC 20006

Peter K. Stris
Rachana A. Pathak
Douglas D. Geyser
John Stokes
STRIS & MAHER LLP
777 S. Figueroa Street, Suite 3850
Los Angeles, CA 90017
T: (213) 995-6800
F: (213) 261-0299
pstris@stris.com

*Counsel for Plaintiff-Appellee*

---

(Additional counsel listed on inside cover)

Gregory Y. Porter
Ryan T. Jenny
Bailey & Glasser, LLP
1055 Thomas Jefferson St NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

ISSUES PRESENTED...................................................................... 4

STATEMENT OF THE CASE.......................................................... 4

SUMMARY OF ARGUMENT ........................................................ 13

ARGUMENT ................................................................................ 16

I.   THE EXPRESSLY NON-SEVERABLE ARBITRATION PROVISION
     ELIMINATES STATUTORY REMEDIES AND IS THUS INVALID......16

     A.   Mr. Cedeno Seeks Multiple Remedies Under ERISA That
          Inherently Benefit The Plan And Other Participants. .........18

     B.   Arbitration Provisions That Purport To Waive Statutory Rights
          Violate Public Policy And Are Invalid. ...............................22

     C.   The Arbitration Provision Impermissibly Prohibits Multiple
          Plan-Wide Remedies That ERISA Provides. .......................28

          1.   The arbitration provision is invalid because it bars (a)(2)
               claims entirely ...........................................................28

          2.   The arbitration provision is also invalid for waiving
               ERISA's plan-wide monetary relief................................29

          3.   Defendants do not address multiple equitable remedies that
               alone render the arbitration provision invalid................41

     D.   The Arbitration Provision Is Expressly Non-Severable, So The
          Whole Provision Falls. ......................................................44

II.  ALTERNATIVELY, THE ARBITRATION CLAUSE CANNOT BE
     ENFORCED BECAUSE MR. CEDENO DID NOT CONSENT TO
     ARBITRATE HIS CLAIMS ........................................................44

     A.   The FAA Requires Mutual Consent To Arbitrate..............45

     B.   Nothing In ERISA Overrides The FAA's Consent Requirement. ......47

1.  ERISA should be interpreted to preserve the FAA's consent
    requirement..................................................................................48

2.  Defendants' efforts to use ERISA to unilaterally impose
    arbitration are meritless...............................................................49

CONCLUSION.................................................................................................56

CERTIFICATE OF COMPLIANCE.....................................................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009)........................................................................23

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)..........................................................................5

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)....................................................................*passim*

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*,
  861 F.2d 1406 (9th Cir. 1988) ........................................................32

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
  926 F.2d 116 (2d Cir. 1991) ......................................................48, 50

*Blanton v. State Univ. of N.Y.*,
  489 F.2d 377 (2d Cir. 1973) ...........................................................41

*Booker v. Robert Half Int'l, Inc.*,
  413 F.3d 77 (D.C. Cir. 2005)...........................................................24

*Browe v. CTC Corp.*,
  15 F.4th 175 (2d Cir. 2021) ............................................................30

*Canaday v. Anthem Cos.*,
  9 F.4th 392 (6th Cir. 2021) .............................................................31

*Carnival Cruise Lines v. Shute*,
  499 U.S. 585 (1991).........................................................................51

*Chappel v. Laboratory Corp. of Am.*,
  232 F.3d 719 (9th Cir. 2000) ..........................................................48

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001).........................................................................23

*In re Citizens Bank, N.A.*,
  15 F.4th 607 (3d Cir. 2021) ............................................................31

iii

*Coady v. Nationwide Motor Sales Corp.*,
　32 F.4th 288 (4th Cir. 2022) ...............................................................46

*Coan v. Kaufman*,
　457 F.3d 250 (2d Cir. 2006) ....................................................1, 6, 14

*Comer v. Micor, Inc.*,
　436 F.3d 1098 (9th Cir. 2006) ...........................................................53

*CompuCredit Corp. v. Greenwood*,
　565 U.S. 95 (2012)..............................................................................20

*Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
　919 F.3d 763 (4th Cir. 2019) .............................................................30

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
　990 F.3d 173 (2d Cir. 2021) .......................................................*passim*

*Delgrosso v. Spang & Co.*,
　769 F.2d 928 (3d Cir. 1985) .................................................................7

*Donovan v. Bierwirth*,
　754 F.2d 1049 (2d Cir. 1985) .............................................................34

*Donovan v. Estate of Fitzsimmons*,
　778 F.2d 298 (7th Cir. 1985) .............................................................34

*Dorman v. Charles Schwab & Co. Inc.*,
　No. 17-cv-00285-CW, 2018 WL 467357 (N.D. Cal. Jan. 18, 2018) ................39

*Dorman v. Charles Schwab Corp.*,
　780 F. App'x 510 (9th Cir. 2019)...............................................*passim*

*Druco Rests., Inc. v. Steak N Shake Enters., Inc.*,
　765 F.3d 776 (7th Cir. 2014) .............................................................46

*Dumais v. Am. Golf Corp.*,
　299 F.3d 1216 (10th Cir. 2002) .........................................................46

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
　725 F.3d 406 (3d Cir. 2013) ...............................................................32

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)............................................................22

*Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)................................................*passim*

*Esden v. Bank of Boston*,
  229 F.3d 154 (2d Cir. 2000) ...........................................17, 20, 34, 48

*Estle v. Int'l Bus. Machines Corp.*,
  23 F.4th 210 (2d Cir. 2022) .........................................27, 31

*Felber v. Estate of Regan*,
  117 F.3d 1084 (8th Cir. 1997) .........................................32

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)......................................................20

*Floss v. Ryan's Family Steak Houses, Inc.*,
  211 F.3d 306 (6th Cir. 2000) .........................................46

*Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*,
  386 F.2d 757 (6th Cir. 1967) .........................................25

*Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp.*,
  617 F.3d 54 (1st Cir. 2010)............................................20

*George Watts & Son, Inc. v. Tiffany & Co.*,
  248 F.3d 577 (7th Cir. 2001) .........................................25

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................25, 30

*Gingras v. Think Fin., Inc.*,
  922 F.3d 112 (2d Cir. 2019) .........................................5, 24

*Gmurzynska v. Hutton*,
  355 F.3d 206 (2d Cir. 2004) .........................................41, 45

*Hadnot v. Bay, Ltd.*,
  344 F.3d 474 (5th Cir. 2003) .........................................24

*Hamilton Park Health Care Ctr., Ltd. v. 1199 SEIU United Healthcare Workers E.*,
 817 F.3d 857 (3d Cir. 2016) ...............................................................46

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
 No. 21-cv-0304, 2022 WL 909394 (D. Colo. Mar. 24, 2022).....................30, 43

*Hawkins v. Cintas Corp.*,
 32 F.4th 625 (6th Cir. 2022) ...............................................................54

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
 571 U.S. 99 (2013)................................................................................52

*Ingle v. Circuit City Stores, Inc.*,
 328 F.3d 1165 (9th Cir. 2003) ............................................................24

*Kramer v. Smith Barney*,
 80 F.3d 1080 (5th Cir. 1996) ..............................................................24

*Kristian v. Comcast Corp.*,
 446 F.3d 25 (1st Cir. 2006)..................................................................24

*L.I. Head Start Child Development Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*,
 710 F.3d 57 (2d Cir. 2013) ..................................................................37

*Lamps Plus, Inc. v. Varela*,
 139 S. Ct. 1407 (2019)..................................................................*passim*

*LaRue v. DeWolff, Boberg, and Assocs., Inc.*,
 552 U.S. 248 (2008)......................................................................*passim*

*Leigh v. Engle*,
 727 F.2d 113 (7th Cir. 1984) ..............................................................32

*Mass. Mut. Life Ins. Co. v. Russell*,
 473 U.S. 134 (1985)......................................................................*passim*

*Milgram v. Orthopedic Assoc. Defined Contribution Pension Plan*,
 666 F.3d 68 (2d Cir. 2011) ..................................................................37

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985)..........................................................5, 19, 23, 25

*Morgan v. Sundance, Inc.*,
    No. 21-328, 2022 WL 1611788 (U.S. May 23, 2022).........................................25

*Morrison v. Amway Corp.*,
    517 F.3d 248 (5th Cir. 2008) .................................................................46

*Munro v. Univ. of S. Cal.*,
    896 F.3d 1088 (9th Cir. 2018) .........................................................38, 40

*Ortiz v. Am. Airlines, Inc.*,
    5 F.4th 622 (5th Cir. 2021) .................................................................30

*Paladino v. Avnet Computer Techs., Inc.*,
    134 F.3d 1054 (11th Cir. 1998) ..........................................................24

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).............................................................................55

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ...............................................................38

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).................................................................6, 19, 55

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967).............................................................................25

*Redel's Inc. v. Gen. Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974) .................................................................25

*Sacerdote v. New York Univ.*,
    9 F.4th 95 (2d Cir. 2021) .......................................................................7

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) .................................................18, 37, 38

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).............................................................................22

*Sec'y U.S. Dep't of Labor v. Koresko*,
    646 F. App'x 230 (3d Cir. 2016) .........................................................32

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ............................................................51

*Smith v. Bd. of Directors of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) ....................................................*passim*

*Smith v. GreatBanc Tr. Co.*,
    No. 20-C-2350, 2020 WL 4926560 (N.D. Ill. Aug. 21, 2020)..........................55

*Spinetti v. Serv. Corp. Int'l*,
    324 F.3d 212 (3d Cir. 2003) ............................................................24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010).................................................................45, 50

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020).................................................................53

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987)......................................................................25

*United States v. Aldi*,
    101 F.3d 682 (2d Cir. 1996) (unpublished) ......................................41

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013)......................................................................35

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)..............................................................7, 34, 55

*Williams v. Medley Opportunity Fund II, LP*,
    965 F.3d 229 (3d Cir. 2020) ...................................................23, 24, 25

*Williams v. Rohm & Haas Pension Plan*,
    497 F.3d 710 (7th Cir. 2007) ............................................................20

## Statutes

9 U.S.C. § 2 ..................................................................................4

9 U.S.C. § 4 ..............................................................................4, 22

29 U.S.C. § 1001(b) ...............................................................1, 5, 19, 48

29 U.S.C. § 1022 ................................................................................11

29 U.S.C § 1102(a)(1) ..........................................................................6

29 U.S.C § 1103(a) ...............................................................................5

29 U.S.C § 1104(a) ...............................................................................5

29 U.S.C § 1104(a)(1)(D) ............................................................*passim*

29 U.S.C § 1106 ....................................................................................5

29 U.S.C § 1109 ...........................................................................*passim*

29 U.S.C § 1110(a) .........................................................................8, 20

29 U.S.C § 1132 .....................................................................8, 15, 54

29 U.S.C. § 1132(a) .........................................................................6, 54

29 U.S.C. § 1132(a)(2) ................................................................*passim*

29 U.S.C. § 1132(a)(3) ................................................................*passim*

29 U.S.C. § 1132(d) ..............................................................................5

29 U.S.C. § 1132(e) ........................................................................6, 48

29 U.S.C. § 1144(d) ............................................................................49

## Other Authorities

Amicus Br. of United States, *Thole v. U.S. Bank*,
    No. 17-1712 (U.S. Sept. 18, 2019) ...................................................19

Amicus Br. of Sec'y of Labor, *David v. Alphin*,
    No. 11-2181 (4th Cir. Dec. 28, 2011)................................................20

H.R. Rep. No. 533, 93d Cong., 2d Sess.............................................5, 48

S. Rep. No. 383, 93d Cong., 2d Sess. ....................................................7

## INTRODUCTION

The Employee Retirement Income Security Act of 1974 ("ERISA") is a landmark federal statute enacted "to protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b) ("Congressional findings and declaration of policy"). The statute imposes strict fiduciary duties of prudence and loyalty, and it enforces those duties through "appropriate remedies, sanctions, and ready access to the Federal courts." *Ibid.*

As part of its civil enforcement regime, ERISA specifically authorizes representative litigation by any participant to remedy injuries to his pension plan. *See, e.g.*, 29 U.S.C. §§ 1132(a)(2), 1109(a) (empowering any participant to seek full payment to the plan of any losses or profits resulting from fiduciary breach and equitable relief to remedy such breach); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) (explaining that Congress was "primarily concerned . . . with remedies that would protect the entire plan"). The statute authorizes relief to the plan, and litigation claims seeking these plan-wide remedies are necessarily representative. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 184 (2d Cir. 2021); *Coan v. Kaufman*, 457 F.3d 250, 259-62 (2d Cir. 2006).

This is a textbook ERISA-participant-as-plan-representative lawsuit. Plaintiff Ramon Dejesus Cedeno sued under ERISA to redress Defendants' imprudent and disloyal conduct towards the Strategic ESOP, an employee stock ownership plan

(the "ESOP" or "Plan"). Defendants caused the Plan to incur crippling debt to buy stock at a massively inflated price. A14-A15, A23-A26. Six of the eight defendants pocketed the $242 million purchase price; another (Argent Trust Company) was compensated for approving the transaction and protected from any potential fallout by an indemnification clause imposed by the selling shareholders on the company. A27-A28. In other words, the employee-owned company indemnified the trustee that breached its fiduciary duties to the employees.

To remedy Defendants' blatant self-dealing, Mr. Cedeno sought rescission of the unlawful transaction, invalidation of the indemnification clause, restoration of all the Plan's losses, disgorgement of all Defendants' ill-gotten profits, and other plan-wide remedies authorized by 29 U.S.C. § 1132(a)(2) and (a)(3). *See*, *e.g.*, A36, A41-A42.

Defendants moved to compel Mr. Cedeno to arbitrate his claims under the Federal Arbitration Act ("FAA"). They invoked an arbitration clause they had included in the Plan document without telling Mr. Cedeno about it, let alone obtaining his consent. And this clause went beyond coercing Mr. Cedeno to submit his claims to an arbitrator instead of a court; it expressly and broadly prohibited the arbitrator from awarding "any remedy that has the purpose or effect of providing" relief to anyone "other than" Mr. Cedeno. A105, A259-A260.

2

The district court refused to compel arbitration. That decision is correct and should be affirmed for two independent reasons:

First, as the district court explained, the arbitration provision is invalid and unenforceable because it forbids Mr. Cedeno from pursuing plan-wide relief and thus impermissibly operates as a "prospective waiver of [Mr. Cedeno's] right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (citation omitted) (emphasis omitted). The district court identified the flaws in Defendants' arguments—the same ones they press on appeal—and it correctly analyzed the plan-wide relief authorized by 29 U.S.C. §§ 1132(a)(2) and 1109. Indeed, the arbitration provision here is *word-for-word identical* to one the Seventh Circuit recently invalidated on precisely these grounds. *See Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021).

Second, Defendants cannot dispute that Mr. Cedeno lacked notice of the arbitration provision until he sued, so they cannot satisfy the FAA's "foundational" requirement of mutual consent. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). Put simply, Defendants colluded to include a term in the Plan document waiving the only way to challenge their collusion and did not tell the only people who could otherwise assert the remedy. Unsurprisingly, the law does not permit arbitration under such circumstances.

3

## ISSUES PRESENTED

1. Whether the arbitration clause is invalid because it would operate as a prospective waiver of Mr. Cedeno's right to seek remedies that ERISA permits.

2. Whether the arbitration clause is unenforceable against Mr. Cedeno because he never had notice of it and therefore could not have consented to arbitrate.

## STATEMENT OF THE CASE

### I. Legal Background

*The Federal Arbitration Act.* The FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable," except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party to an arbitration agreement is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under" that agreement, it can ask a court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

It is a "'foundational FAA principle'" that arbitration "'is strictly a matter of consent.'" *Lamps Plus*, 139 S. Ct. at 1415 (citations omitted). One party may not force another to arbitrate where he or she has not agreed to do so. *Ibid.* Parties may choose with whom they arbitrate, which issues to submit to an arbitrator rather than a court, and the procedures governing arbitration. *Id.* at 1416.

The parties' freedom to structure arbitration, however, is not unlimited. Supreme Court decisions have made clear that arbitration must allow effective vindication of "rights granted by federal and state law." *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019). That principle renders invalid "a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).

*The Employee Retirement Income Security Act of 1974*. Congress enacted ERISA "to protect . . . the interests of participants in employee benefit plans and their beneficiaries," safeguarding their rights with "appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). In crafting those safeguards, Congress recognized that "jurisdictional and procedural obstacles" had "hampered effective enforcement of fiduciary responsibilities." H.R. Rep. No. 533, 93d Cong., 2d Sess. 17, 1974 U.S.C.C.A.N. 4639, 4665.

ERISA carefully delineates plan administration and enforcement. The plan is a distinct legal entity (*see* 29 U.S.C. § 1132(d)), and "all assets" of the plan must "be held in trust by one or more trustees." *Id.* § 1103(a). Plan fiduciaries must satisfy duties of prudence and loyalty and may not engage in certain prohibited transactions. *Id.* §§ 1104(a), 1106. The plan is governed by a written plan document, *see id.*

§§ 1102(a)(1), 1104(a)(1)(D), but this document is not coterminous with the plan as an entity.

To enforce ERISA's duties and to redress harm to the plan and participants, Congress designed with "evident care" an "interlocking, interrelated, and interdependent remedial scheme." *Russell*, 473 U.S. at 146-47. It empowered participants to bring a wide variety of actions and gave federal district courts "exclusive jurisdiction" over them. 29 U.S.C. § 1132(a), (e). "The civil enforcement scheme of § [1132](a) is one of the essential tools for accomplishing the stated purposes of ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987).

Section 1132(a)(2) authorizes participants to sue for the plan-wide relief provided in § 1109. *See* 29 U.S.C. § 1132(a)(2) (providing "[a] civil action" "for appropriate relief under section 1109"). The (a)(2) claim is "brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *Coan*, 457 F.3d at 257. And in this Circuit, plaintiffs asserting a claim under (a)(2) must "demonstrate their suitability to serve as representatives of the interests of other plan stakeholders." *Cooper*, 990 F.3d at 184.

The remedies set forth in § 1109 vindicate participants' interest in "the financial integrity of the plan" as a whole. *Russell*, 473 U.S. at 142 n.9. A breaching fiduciary must "make good *to such plan* any losses *to the plan* resulting from" the

breach and must "restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*." 29 U.S.C. § 1109(a) (emphases added).

Section 1109 also broadly authorizes equitable and "remedial" relief, including removal of a fiduciary and appointment of an independent fiduciary. *Ibid.*; *see also, e.g.*, *Sacerdote v. New York Univ.*, 9 F.4th 95, 116 n.86 (2d Cir. 2021) (explaining that fiduciary removal is "equitable relief . . . available under 29 U.S.C. § 1109(a)); *Delgrosso v. Spang & Co.*, 769 F.2d 928, 937 (3d Cir. 1985) ("Removal and replacement of a fund administrator under ERISA has been found appropriate where the administrator has been in substantial violation of his fiduciary duties.") (citing *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984), *overruled on other grounds*); S. Rep. No. 383, 93d Cong., 2d Sess. 105-06, 1974 U.S.C.C.A.N. 4889, 4989 ("upon removal the court may, in its discretion, appoint someone to serve until a fiduciary is properly chosen in accordance with the plan").

Section 1132(a)(3), a catchall remedial provision, further permits participants to seek injunctive and equitable relief to redress fiduciary and non-fiduciary misconduct. *See* 29 U.S.C. § 1132(a)(3) (authorizing lawsuits "to enjoin any act or practice which violates" ERISA or "to obtain other appropriate equitable relief (i) to redress . . . violations of [ERISA] or (ii) to enforce [ERISA]"); *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (Section 1132(a)(3) is a "catchall" provision "offering

appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy").

These statutory entitlements cannot be waived by contract. Congress declared that inconsistent plan provisions are unenforceable. 29 U.S.C. § 1104(a)(1)(D). And it rendered "void" any agreement that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty." *Id.* § 1110(a).

## II. Facts And Procedural History

A. Plaintiff Ramon Dejesus Cedeno was employed at Strategic Financial from 2016 to 2019. A16. Strategic Financial is a subsidiary of Strategic Family. A13. Mr. Cedeno has been a participant in the Plan since it was adopted in 2017. A16.

In December 2017, the Plan purchased 75% of Strategic Family's common stock from Defendants Ryan Sasson, Daniel Blumkin, and Ian Behar and their wholly-owned limited liability companies Duke Enterprises LLC, Twist Financial LLC, and Blaise Investments LLC, as well as other selling shareholders. A23. The company repurchased, cancelled, and retired the remaining 25% of the shares, so Strategic Family became 100% owned by the Plan. A23.

The selling shareholders had control of Strategic Family at the time of the transaction, and they retained control of Strategic Family afterward through their control of the board of directors. A24-A25. The individual defendants have occupied leadership positions at least since the transaction occurred: Mr. Sasson as CEO and

a director of Strategic Family and/or Strategic Financial; Mr. Blumkin as President, Chief Sales Officer, and a director; and Mr. Behar as a director and/or officer. A17-A18.

The Plan paid over $242 million for the company's shares, approximately $4,412 per share. A23. The Plan financed the full payment price via its trust by signing notes payable to the selling shareholders. A23. The transaction thus allowed the selling shareholders to unload their interests in the company by saddling the Plan with massive debt used to buy them out. A14-A15.

The ESOP transaction was orchestrated by Argent, which Strategic Financial had appointed as trustee for the Plan. A22. As trustee, Argent owed fiduciary duties to participants like Mr. Cedeno. *E.g.*, A22. Argent violated those duties by causing the Plan to overpay for the Strategic Family shares, including by factoring in a "control premium" even though the selling shareholders retained actual control of the company. A24-A25. Argent also accepted unreasonably optimistic financial projections that Strategic provided, conducted poor due diligence, and performed faulty valuations. A25-A26.

Tellingly, just *three days* after the Plan paid over $242 million for ownership of Strategic Family, those shares were revalued at *less than half* that amount, approximately $111 million. A25. A year later, the fair market value dropped further to roughly $101 million. A25.

Despite breaching its fiduciary duties and causing the Plan to overpay by more than $100 million, Argent received from Strategic Family and Strategic Financial fees and indemnification. A27-A28. Those substantial benefits (and the prospect of being retained as the Plan's ongoing trustee after the ESOP Transaction) explain why Argent accepted Strategic Family's inflated value—rubber stamping proposed ESOP transaction terms helps Argent get picked by other selling shareholders to do the same thing as trustee for their companies' ESOP transactions. A26.

When Strategic Financial adopted the Plan in May 2017, the Plan document included an arbitration provision that obliterates the plan-wide remedies that ERISA entitles participants to seek. A105-A108, A259-60. The provision expressly and repeatedly bars any plan-wide relief and any relief that extends beyond Mr. Cedeno. It states that claims "must be brought in the Claimant's individual capacity and not in a representative capacity." A105, A259. It goes on to provide that the "Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any [participant or beneficiary] other than the Claimant." A105, A259. As to 29 U.S.C. §§ 1132(a)(2) and 1109 specifically, relief is "limited to" the "losses to the Claimant's Accounts" and "a pro-rated portion of any profits" the breaching fiduciary made. A105, A259. And "remedial and equitable relief" must "not [be] binding on the [Plan administrator] or

the Trustee with respect to any [participant or beneficiary] other than the Claimant." A106, A260.

The arbitration clause's provisions are also expressly non-severable. The clause states that its prohibition on representative claims and restrictions on remedies are "material and non-severable term[s] of the Arbitration Procedure," and if a court "finds these requirements to be unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." A106, A260.

The first time Mr. Cedeno learned of the arbitration provision was after he filed this lawsuit. *See* Pl.'s Mem. of Law in Opp. to Mtn. to Compel Individual Arbitration and Stay the Case ("Pl.'s Opp.") 17-18, ECF Doc. 65.[1]

B. Mr. Cedeno filed this action to remedy the unfair ESOP transaction. He alleges that Argent breached its fiduciary duties and that all Defendants engaged in a prohibited transaction. A30-A37. He seeks relief under 29 U.S.C. §§ 1132(a)(2), (a)(3), and 1109. He requests, among other remedies, that Defendants "make good to the Plan" any "losses resulting from the breaches of ERISA and restore any profits it, he, or she has made" and that the court order equitable relief to the Plan, including an accounting for profits and constructive trust, as well as other equitable or remedial relief authorized by § 1109. A41. Mr. Cedeno also requests orders rescinding the

---

[1] In fact, the summary plan description ("SPD") states that participants may bring these claims in federal court. *See id.* at 4. And that SPD is required by ERISA to explain material terms in a manner designed for lay people. *See* 29 U.S.C. § 1022.

unlawful transactions and invalidating Argent's indemnification agreement. A36-A37, A42.

Defendants moved to compel arbitration. The parties briefed, among other issues, (1) whether the arbitration provision was invalid for prospectively waiving statutory remedies under ERISA and (2) whether the arbitration provision was unenforceable because Mr. Cedeno never consented to arbitrate. *See* Defs.' Mem. of Law in Support of Mot. to Compel Individual Arbitration and Stay the Case ("Defs.' Mot. to Compel") 8-10, ECF Doc. 60; Pl.'s Opp. 15-19. The district court reached only the first issue. A272-A286.

In a thorough opinion, the court denied Defendants' motion. The court first held that "the text of ERISA" and "well-established precedent" demonstrate that a participant in a defined contribution plan has a "statutory right to seek plan-wide relief." A277. The "plain text" of § 1109(a) "includes restitution of the entirety of the loss to the plan." A277. And the Supreme Court's decisions in *LaRue v. DeWolff, Boberg, and Assocs., Inc.*, 552 U.S. 248 (2008), and *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), confirm "that relief is available wherever it would advance the protection of the entire plan." A280. The court noted that this Court and other circuits have awarded "plan-wide relief" to defined contribution plan participants. A280.

The court next explained that the arbitration provision was invalid because "prospective waivers of statutory rights are impermissible." A281 (citing *Am. Express*, 570 U.S. at 236). And the provision impermissibly "precludes an individual participant from seeking Plan-wide relief." A282-A283.

Finally, the court rejected Defendants' argument that the FAA permits them to eliminate ERISA's remedies. Distinguishing *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), the court explained that the FAA protects the "manner" of arbitration, which covers "collective proceedings." A283. "The FAA," however, "does not protect the remedies sought in arbitration." A284. And Defendants' prospective waiver "is not a clause about the 'manner' of arbitration, but a clause about the remedies available to a participant in an ERISA plan." A284.

Because the arbitration provision's requirements are expressly non-severable, the entire provision was invalid. A285-A286. The court concluded: "The plaintiff has the right under [ERISA] §§ 409(a) and 502(a)(2) to recover for the Plan as a whole. That right is not waivable. [Defendants' arbitration provision], which purports to waive that right, is therefore invalid." A286.

## SUMMARY OF ARGUMENT

**I.** The district court correctly denied Defendants' motion to compel on the well-settled grounds that an arbitration provision is invalid to the extent that it acts as a "'prospective waiver of a party's *right to pursue* statutory remedies.'" *Am.*

13

*Express*, 570 U.S. at 236 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19) (emphasis in original). And the arbitration provision here explicitly forbids remedies that 29 U.S.C. § 1132(a)(2) and (a)(3) authorize.

The provision bars any claim brought in a "representative capacity" and any remedy which "has the purpose or effect of providing additional benefits or monetary or other relief to [anyone] other than the Claimant." A105, A259. No remedy can be "binding . . . with respect to any [participant] other than the Claimant." A106, A260. Remedies with plan-wide effect are simply unavailable under any circumstances.

Claims under § 1132(a)(2) can *only* be brought in a representative capacity, however, and ERISA expressly authorizes plan-wide relief. *See Russell*, 473 U.S. at 142 n.9; *Cooper*, 990 F.3d at 184-85; *Coan*, 457 F.3d at 259-62; 29 U.S.C. §§ 1132(a)(2), (a)(3), 1109. In addition to permitting recovery of "any losses" and restoration of "any profits" from the breaching fiduciary, the statute permits beneficiaries to seek other appropriate equitable and injunctive relief that necessarily operates plan-wide. Indeed, plan-wide remedies are the core purpose of claims under § 1132(a)(2). *Russell*, 473 U.S. at 142 (Congress was "primarily concerned . . . with remedies that would protect the entire plan"). As the Seventh Circuit recently held, those remedies would obviously be binding beyond the individual plaintiff. *Smith*,

14

13 F.4th at 621-23. There can accordingly be no question that the arbitration provision impermissibly eliminates statutory remedies.

Defendants' reliance on individualized arbitration and class-action procedures misunderstands ERISA. Sections 1132 and 1109 *do not* provide a procedural mechanism for aggregating similar claims from different plaintiffs. They authorize multiple substantive remedies that protect the plan as a whole. The arbitration provision purports to prohibit those remedies. It is therefore invalid.

That causes the entire provision to fall under its own terms. The provision states that if any of its "requirements" are found "unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." A106, A260.

**II.** The court's order also can be affirmed on the alternative basis that the arbitration provision cannot be enforced because Mr. Cedeno did not agree to arbitrate. It is a fundamental principle of the FAA that arbitration cannot be imposed unilaterally; both parties must consent to arbitrate the dispute at hand. *E.g.*, *Lamps Plus*, 139 S. Ct. at 1415. Mr. Cedeno did not even have notice of the arbitration provision. He cannot have agreed to something of which he was entirely unaware.

In the district court, Defendants offered two excuses to sidestep the FAA's consent requirement. First, they said that ERISA permits plan amendments without notice or consent. But nothing in ERISA overrides *the FAA's* consent requirement.

15

Indeed, the entire point of ERISA is to enhance participants' ability to enforce their pension rights, and it is well settled that a plan participant like Mr. Cedeno has a personal interest in his ERISA claims. His consent is necessary to send him to arbitration, just like with any other contract under the FAA.

Second, Defendants argued that Mr. Cedeno effectively consented merely by participating in the Plan. But because he lacked notice of the arbitration provision, his participation signals nothing. The legal principles Defendants invoked make clear that notice is a fundamental prerequisite to consent. Without notice, the arbitration clause is unenforceable.

## ARGUMENT

## I.   THE EXPRESSLY NON-SEVERABLE ARBITRATION PROVISION ELIMINATES STATUTORY REMEDIES AND IS THUS INVALID

The district court correctly held that Defendants' arbitration provision is invalid because it impermissibly prevents Mr. Cedeno "from seeking relief for the plan as a whole, a form of relief that is otherwise provided for by ERISA." A272. That holding followed well-established precedent interpreting the FAA: Both the Supreme Court and this Court (among others) have repeatedly explained that arbitration clauses are unenforceable if they prospectively waive remedies that a federal statute expressly permits. The Seventh Circuit recently held that an *identically worded* arbitration provision was invalid because it eliminated ERISA remedies that necessarily have "a plan-wide effect" and provide "relief" to someone

other than" the plaintiff. *See Smith*, 13 F.4th at 616, 620-23. Just so here. Defendants' arbitration provision bans multiple plan-wide remedies that would necessarily benefit the plan and participants other than Mr. Cedeno.

Defendants' attacks on the district court's decision profoundly misunderstand both ERISA and the FAA. As to ERISA, they treat its comprehensive remedial scheme as offering mere suggestions that a plan can freely decline. That view contravenes ERISA's text and purpose, including its specific command that plans may not "contract around the statute." *Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000); *see* 29 U.S.C. § 1104(a)(1)(D). They also wrongly equate § 1109(a)'s provision for plan-wide relief with class action procedures. But § 1109(a) does not aggregate similar claims by different individual plaintiffs; it authorizes a representative remedy to make the entire plan whole. As to the FAA, Defendants believe that it insulates any contract provision that falls under the heading of "arbitration." But the Supreme Court and courts of appeals have repeatedly explained that the FAA protects only the *manner* of resolving claims. It does not permit parties to rewrite the substantive claims and their remedies. Preserving ERISA's remedies thus does not countermand the FAA—precisely because there is nothing in the FAA about remedies to countermand. As the district court recognized, "'[t]he conflict in need of harmonization is not between the FAA and ERISA; it is

17

between ERISA and the plan's arbitration provision.'" A284 (quoting *Smith*, 13 F.4th at 622-23). Its order should be affirmed.

### A. Mr. Cedeno Seeks Multiple Remedies Under ERISA That Inherently Benefit The Plan And Other Participants.

1. ERISA provides participants broad remedies for fiduciary and party-in-interest violations, including the right to seek a variety of remedies on behalf of the entire plan. Under § 502(a)(2) of ERISA, "a participant" may sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, makes fiduciaries "personally liable to make good to [the] plan *any* losses to the plan" resulting from a fiduciary breach, and it requires fiduciaries to "restore to [the] plan *any* profits of such fiduciary which have been made through use of assets of the plan." 29 U.S.C. § 1109(a) (emphases added). Section 1109 also broadly authorizes "other equitable or remedial relief as the court may deem appropriate" to redress a fiduciary breach. *Ibid*. And § 1132(a)(3)'s catchall provision similarly provides for "appropriate equitable relief."

As the Supreme Court has explained, every § 1132(a)(2) claim is necessarily "brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *see, e.g.*, *Cooper*, 990 F.3d at 180 ("Sections [1132](a)(2) and [11]09, read together, mean that a plaintiff suing for breach of fiduciary duty under § [1132](a)(2) may seek recovery only for injury done to the wronged plan."); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("Section

18

502(a)(2) claims are, by their nature, plan claims."). Thus, § 1132(a)(2) expressly permits participants to seek plan-wide relief, including restoration of *all* losses, disgorgement of *all* profits, rescission of the unlawful transaction, and other equitable remedies that inherently operate plan-wide. *See Russell*, 473 U.S. at 140 & n.8; 29 U.S.C. § 1109(a); *LaRue*, 552 U.S. at 261 (Thomas, J., concurring) ("On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach.") (emphasis in original).

Sections 1132(a)(2), 1132(a)(3), and 1109 thus form an essential substantive part of ERISA's "remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637; *see, e.g.*, *Russell*, 473 U.S. at 146-147 (explaining that "ERISA's interlocking, interrelated, and interdependent remedial scheme" was "crafted with" "evident care") (citation omitted); *Pilot Life*, 481 U.S. at 52. Congress expressly declared ERISA's policy as "protecting" participants' interests "by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The Department of Labor has emphasized that this private right of action is crucial to fulfilling ERISA's goals: "[G]iven limited resources, the Secretary of Labor cannot monitor every plan in the country. Congress thus reasonably determined that the *best* means of protecting individual pension rights was to authorize beneficiaries to sue fiduciaries who breach their duties . . . ." U.S. Br. 26, *Thole v. U.S. Bank*, No.

19

17-1712 (U.S. Sept. 18, 2019); *see also, e.g.*, Amicus Br. of Sec'y of Labor 12, *David v. Alphin*, No. 11-2181 (4th Cir. Dec. 28, 2011).

Critically for this appeal, Congress confirmed that these remedies are essential to ERISA by ensuring that they cannot be bargained away. Plan terms that are "[in]consistent with" ERISA's core statutory framework are void and unenforceable. 29 U.S.C. § 1104(a)(1)(D); *see also id.* § 1110(a) ("[A]ny provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."). ERISA itself thus makes clear that plans "cannot contract around the statute." *Esden*, 229 F.3d at 173 (invoking § 1104(a)(1)(D)); *see Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014) ("§ 1104(a)(1)(D) requires fiduciaries to follow plan documents so long as they do not conflict with ERISA"); *Gastronomical Workers Union Local 610 v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 62 (1st Cir. 2010) ("Were the rule otherwise, parties could elude ERISA's commands by the simple expedient of sharp bargaining."); *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("The Plan cannot avoid that which is dictated by the terms of ERISA.").[2]

_____

[2] Section 1104(a)(1)(D) is broader than the nonwaiver provision in *CompuCredit Corp. v. Greenwood*, which "prohibit[ed] the waiver of 'any *right* of the consumer under this subchapter.'" 565 U.S. 95, 99 (2012) (emphasis added). And the "right" the plaintiff invoked was nothing more than a disclosure provision, *id.* at 99-100, rather than, as here, the entitlement to specific remedies.

20

2. Mr. Cedeno seeks precisely the plan-wide relief that ERISA guarantees. His complaint invokes § 1109 to hold the fiduciaries "personally liable to make good to the plan any losses to the plan" and to obtain "such other equitable or remedial relief as the court may deem appropriate." A31, Compl. ¶ 97; *see* A31-A32, A34, Compl. ¶¶ 98, 103, 112. The complaint requests Defendants to "make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan." A41, Prayer for Relief ¶ D. To ensure that Plan losses and ill-gotten profits can in fact be returned to the Plan and distributed to participants, Mr. Cedeno seeks a variety of equitable remedies, including constructive trust, equitable lien, injunctive relief, appointment of an independent fiduciary and removal of the breaching fiduciaries. *See* A41, Prayer for Relief ¶ E; A42, Prayer for Relief ¶ O; A36, Compl. ¶ 126. He likewise asks the court to order the ESOP "transactions rescinded." A36, Compl. ¶ 126. And he requests that Argent's indemnification agreement be invalidated. A42, Prayer for Relief ¶ H; A34-A35, Compl. ¶ 115.

ERISA authorizes these remedies to protect the Plan and its participants. They collectively prevent the breaching fiduciaries and parties-in-interest from continuing to benefit from funds that rightfully belong to the Plan and from frustrating the Plan's ability to effectively seek disgorgement of all profits and restoration of all losses.

It is undisputed that the arbitration provision prevents Mr. Cedeno from pursuing those remedies. The remedy restrictions have nothing to do with arbitration. And had those restrictions simply been inserted into the Plan contract outside the arbitration provision, they would plainly be unlawful under ERISA. Defendants are wrong that the FAA requires a different result. As explained next, far from allowing parties to rewrite Congress's remedial scheme, it is well settled that prospective waivers of statutory remedies are invalid.

### B. Arbitration Provisions That Purport To Waive Statutory Rights Violate Public Policy And Are Invalid.

The FAA allows parties to specify the "manner" in which their disputes are resolved. 9 U.S.C. § 4 (authorizing a court "order directing that such arbitration proceed in the manner provided for in such agreement"). That means they can set the procedures governing a statutory claim's adjudication—"with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Lamps Plus*, 139 S. Ct. at 1416; *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295 n.10 (2002) ("[F]ederal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the FAA because the agreement only determines the choice of forum."); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (an arbitration agreement "posits not only the situs of suit but also the procedure to be used in resolving the dispute").

The FAA does not, however, empower parties to change the substantive rights and remedies that Congress established. The Supreme Court has repeatedly explained that an arbitration provision is invalid if it acts "'as a prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Express*, 570 U.S. at 236 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19) (emphasis in original). And "[t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Ibid.*; *see, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273 (2009) ("a substantive waiver of federally protected civil rights will not be upheld"); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). The plaintiff must be able to "effectively . . . vindicate its statutory cause of action," so that "the statute will continue to serve both its remedial and deterrent function." *Mitsubishi Motors*, 473 U.S. at 637. "Put differently, while arbitration may be a forum to resolve disputes, an agreement to resolve disputes in that forum will be enforced only when a litigant can pursue his statutory rights there." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238 (3d Cir. 2020) (citations omitted).

Defendants' description of this prospective-waiver doctrine as "[t]heoretical" is bizarre. Br. 25. Numerous federal appellate courts, including this one, have followed the Supreme Court's reasoning and held that arbitration agreements that eliminate statutory rights or the ability to pursue statutory remedies are

unenforceable. *See, e.g.*, *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) ("[A]rbitration agreements that waive a party's right to pursue federal statutory remedies are prohibited."); *Smith*, 13 F.4th at 618-23; *Williams*, 965 F.3d at 238-43 (holding that the arbitration clause impermissibly prevented bringing a RICO claim); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) (impermissible waiver of attorney's fees); *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (arbitration provision could not eliminate treble damages authorized by antitrust statute); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) (impermissible waiver of punitive damages: "Statutory claims may be subject to agreements to arbitrate, so long as the agreement does not require the claimant to forgo substantive rights afforded under the statute."); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 & n.14 (5th Cir. 2003) (arbitration clause that eliminated punitive damages provided for under Title VII was unenforceable); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003) (holding "unenforceable" an arbitration clause that "'fail[ed] to provide for all the types of relief that would otherwise be available in court'") (citation omitted); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that an arbitration clause's prohibition on damages and equitable relief under Title VII was unenforceable); *Kramer v. Smith Barney*, 80 F.3d 1080, 1085 (5th Cir. 1996)

(invalidating arbitration clause's shortened limitations period for ERISA fiduciary breach claims).

This prohibition reflects the bedrock principle that parties cannot contract to violate public policy. *See, e.g.*, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987) (discussing the "general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy"); *Williams*, 965 F.3d at 238; *Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 98-99 (5th Cir. 1974) (cited approvingly by *Mitsubishi Motors*, 473 U.S. at 637 n.19); *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967) (same); *cf. George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580-81 (7th Cir. 2001) (explaining that, as an agent of the parties, an arbitrator may do only what "the parties may do directly," and thus "an arbitrator may not direct the parties to violate the law"). The FAA simply "place[s] arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see Morgan v. Sundance, Inc.*, No. 21-328, 2022 WL 1611788, at *4 (U.S. May 23, 2022) ("[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules. . . . The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.") (citations omitted); *Prima Paint Corp. v. Flood & Conklin*

*Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.").

"Other contracts" cannot violate the law. If a party cannot eliminate a statutory remedy outside of an arbitration provision, it cannot save that unlawful waiver by wrapping it inside an arbitration clause.

Accordingly, while the FAA means courts must generally "enforce the parties' chosen arbitration *procedures*" in the face of contrary laws (*Epic Sys.*, 138 S. Ct. at 1621 (emphasis added)), nothing in the FAA authorizes parties to rewrite statutory *remedies*. *See* A284 ("There is nothing in the FAA that directs a Court to defer to the remedies provided in an arbitration agreement.").[3]

When the district court held that Defendants' arbitration clause impermissibly eliminated ERISA's statutory remedies, that did not make ERISA "override" the FAA. *Contra* Br. 30. Because the FAA does not support limiting statutory remedies, there is nothing to override. The conflict "is not between the FAA and ERISA; it is between ERISA and the plan's arbitration provision, which precludes certain remedies that [ERISA] expressly permit[s]." *Smith*, 13 F.4th at 622-23.

---

[3] Even procedural choices might prevent parties from effectively vindicating their statutory rights. Defendants certainly wouldn't dispute that a million-dollar filing fee, a one-day limitations period, or a complete ban on discovery would be unenforceable.

Defendants' lengthy discussion of individualized arbitration (Br. 25-29) is therefore almost wholly beside the point. Individualized arbitration is a procedural restriction. As Defendants themselves explain, the class or collective action procedures that the Supreme Court has addressed enable a plaintiff to sue "on behalf of other similarly situated parties." Br. 28 (discussing *Epic Systems*). So waiving those procedures "no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief." *Am. Express*, 570 U.S. at 236; *see Estle v. Int'l Bus. Machines Corp.*, 23 F.4th 210, 214 (2d Cir. 2022) ("[C]ollective action, like arbitration, is a 'procedural mechanism,' not a substantive right.").[4]

But Defendants' arbitration provision does not just prevent plaintiffs from using class action procedures. It entirely prohibits multiple substantive remedies ERISA provides, including various forms of injunctive relief and equitable remedies like rescission and invalidation of the indemnification agreement, as well as monetary relief to make the plan whole. And because the arbitration provision includes a non-severability clause, the entire provision falls if even a single of the remedies discussed next is impermissibly waived. A106.

---

[4] As Mr. Cedeno acknowledged below, if the arbitration provision waived *only* class action procedures, it would be enforceable. Pl.'s Opp. 11 n.5.

### C.     The Arbitration Provision Impermissibly Prohibits Multiple Plan-Wide Remedies That ERISA Provides.

It is undeniable that ERISA provides for remedies with plan-wide effect and that Mr. Cedeno seeks those remedies here. And it is undisputed that Defendants' arbitration provision prohibits those remedies. Specifically, the clause provides that claims "must be brought solely in the Claimant's individual capacity and not in a representative capacity"; the "Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any [participant] other than the Claimant"; and any relief must "not [be] binding on the [Plan] Administrator or Trustee with respect to any [participant] other than the Claimant." A105-A106. That prospective waiver prevents Mr. Cedeno from effectively vindicating his statutory rights under ERISA, and it is therefore invalid.

### 1.     The arbitration provision is invalid because it bars (a)(2) claims entirely

Even apart from its restriction on the specific remedies authorized by ERISA, the arbitration provision is invalid because its plain language bars § 1132(a)(2) claims entirely. The arbitration clause requires any claim to "be brought solely in [an] individual capacity and not in a representative capacity." A105. But as this Court has said, § 1132(a)(2) claims *must* be brought in a representative capacity (though not necessarily through a class action). *Cooper*, 990 F.3d at 184; *see LaRue*,

552 U.S. at 256 (stating that "(a)(2) does not provide a remedy for individual injuries distinct from plan injuries").

That is why this Court imposes a "representative adequacy" requirement on (a)(2) plaintiffs. *Cooper*, 990 F.3d at 184 (citing *Coan*, 457 F.3d at 259, 261 and explaining that (a)(2) plaintiffs must "demonstrate their suitability to serve as representatives" in order "to ensure that any 'recovery inures to the benefit of the plan as a whole'"). And it is why the provision in *Cooper* that purported to require arbitration "on a single [claimant] basis" would violate the rule against "'forbidding the assertion of certain statutory rights.'" *Ibid.* (quoting *Am. Express*, 570 U.S. at 236). As in *Cooper*, the arbitration provision here "make[s] it impossible to bring an ERISA fiduciary action that satisfies" the representative-capacity prerequisite of § 1132(a)(2). *Ibid.* It therefore prevents participants from asserting (a)(2) claims at all and is unenforceable.[5]

### 2. The arbitration provision is also invalid for waiving ERISA's plan-wide monetary relief

a. As the district court carefully explained, the arbitration provision is invalid because it bars plan-wide monetary relief for the Plan. *See* A281-A285. ERISA

---

[5] Contrary to Defendants' assertion (Br. 40 n.10), this part of *Cooper*—all of that opinion's Part II—is not *dicta* but rather an alternative holding. Although the Court's judgment also rested on interpreting the arbitration clause's scope to unambiguously exclude the dispute at issue, Part II explained that if the clause were ambiguous, the enforceability concern would spur the Court to adopt that interpretation anyway.

permits recovery of "*any* losses *to the plan*" and disgorgement of "*any* profits . . . made through use of assets *of the plan*." 29 U.S.C. § 1109(a) (emphases added). As that language reflects, this recovery "inures to the benefit of the plan *as a whole*." *Russell*, 473 U.S. at 140 (emphasis added); *see id.* at 142 n.9. "On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach." *LaRue*, 552 U.S. at 261 (Thomas, J., concurring in the judgment) (emphasis in original). Congress was "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan." *Russell*, 473 U.S. at 142.

That is why courts regularly allow a single participant to sue to restore *all* plan losses or disgorge *all* profits arising from the fiduciary breach. *See, e.g.*, *Browe v. CTC Corp.*, 15 F.4th 175, 197-99 (2d Cir. 2021); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 & n.7 (5th Cir. 2021); *Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 781-82 (4th Cir. 2019); A280.

These cases illustrate that § 1109 is not a mere procedural mechanism for combining multiple individual claims into one action, as were the provisions in *Epic Systems* and *Gilmer*. *See, e.g.*, A284-A285; *Am. Express*, 570 U.S. at 236 ("The class-action waiver . . . no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."); *Harrison*, 2022 WL 909394, at *6 (distinguishing *Epic Systems*);

30

*cf. In re Citizens Bank, N.A.*, 15 F.4th 607, 611 (3d Cir. 2021) (describing class actions and collective actions as "aggregate litigation"); *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021) (explaining that class actions and collective actions "both streamline aggregate litigation by permitting large numbers of individuals to litigate similar claims").

If it were, a single plaintiff would be unable to obtain the full plan-wide relief that courts regularly allow. But they can because § 1109 provides a substantive remedial right—and imposes a substantive obligation on breaching fiduciaries—to restore the plan's losses, surrender profits from using the plan's assets, and redress the plan's injury. *See* 29 U.S.C. § 1109(a) (using mandatory term "shall"). Put another way, whereas a "collective action" is merely one "'procedural mechanism'" for obtaining the statutory remedy (*Estle*, 23 F.4th at 214), "losses to the plan" *is* the remedy. 29 U.S.C. § 1109(a).

ERISA thus does not limit restoration of losses to the plaintiff's individual account. *See ibid.*; A277-A281 ("[D]efendants' contention that ERISA does not confer a right to a plan-wide remedy for a participant in a defined contribution plan who claims that fiduciaries breached their duties to the plan is without merit."). Indeed, Mr. Cedeno's share of the Plan's losses cannot even be calculated without first determining the total losses suffered by the Plan—his remedy is based upon the Plan paying more than fair market value for the company's stock in the ESOP

31

transaction. Nor does ERISA countenance a fiduciary or party in interest retaining all its ill-gotten profits except for the pro rata portion attributable to the individual plaintiff participant. "The purpose of disgorgement of profits is deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing." *Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016).

And to effectuate that purpose, as multiple circuits have recognized, the statute authorizes an accounting of profits or the imposition of a constructive trust over the ill-gotten gains. *See Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) ("ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs. Under 29 U.S.C. § 1109(a), ERISA provides that plans can recover that profit whether or not the plan suffered a financial loss."); *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) ("[T]he imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of all plan participants and beneficiaries is an important, appropriate, and available form of relief under ERISA § 409(a), particularly when it is the only means of denying a fiduciary ill-gotten profits that flow from the breach of his duty of loyalty to the entire ERISA plan."); *Leigh v. Engle*, 727 F.2d 113, 122 (7th Cir. 1984); *Felber v. Estate of Regan*, 117 F.3d 1084, 1087 (8th Cir. 1997). By limiting disgorgement to the individual plaintiff's pro-rated share, the arbitration provision impermissibly curtails this important statutory remedy.

In short, Defendants' arbitration provision does not just change the manner in which a § 1132(a)(2) claim is decided; it changes the substantive claim itself. It would plainly be "[in]consistent with" ERISA to insert into the plan document a paragraph restricting a § 1109 recovery to a claimant's pro rata share in court. 29 U.S.C. § 1104(a)(1)(D). Defendants cannot save that unlawful restriction by having an arbitrator apply it instead. *See* A283-A284; *supra* Part I.B.

b. Defendants respond by trying to characterize §§ 1132(a)(2) and 1109(a) as mere procedures for a class action or collective action. Br. 31-42. Their position falters on the text and precedents from the Supreme Court and this Court.

*First*, the statute's plain text refutes their view. A single participant sues as a representative of the plan to redress injury to "the plan." 29 U.S.C. § 1109(a). That does not resemble class or collective actions, where the plaintiff sues solely on her own behalf to redress her own injury, but uses a procedure to aggregate other similar claims. *Supra* pp. 30-31. Defendants are right that these provisions "do not even mention group legal procedures." Br. 31. Just so—these sections create a distinct representative remedy. That is why, as the district court noted, federal courts have permitted a single plaintiff to obtain plan-wide relief. A280; *supra* pp. 30. That could never happen with a class or collective action.

Defendants admit that § 1109(a) makes a fiduciary "liable *to the plan* for the full amount of losses the plan suffered," yet in the very next paragraph doubt that

participants may "obtain recovery for the plan as a whole." Br. 33 (emphasis in original). That is exactly what §§ 1132(a)(2) and 1109(a) do. Section 1132(a)(2) empowers the participant to seek the relief provided by § 1109, and § 1109 says that the fiduciary "*shall*" be liable for the full amount of plan losses. And Defendants do not even acknowledge § 1104(a)(1)(D) and this Court's holding that a plan "cannot contract around the statute." *Esden*, 229 F.3d at 173.

Defendants try to sidestep § 1109(a) with the sweeping argument that it does not create any "rights at all." Br. 32. They seize on the word "appropriate" in § 1132(a)(2): "This provision does not say *what* relief is 'appropriate' under § [11]09 or what the scope of such relief should be." Br. 32 (emphasis in original). On the contrary, § 1109(a) specifies, with mandatory language, which remedies a fiduciary is subject to. The word "appropriate" simply reflects the court's authority to fashion a remedy fitting ERISA's goals and the facts of the case. *See, e.g.*, *Varity*, 516 U.S. at 515 ("We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the 'special nature and purpose of employee benefit plans,' and will respect the 'policy choices reflected in the inclusion of certain remedies and the exclusion of others.'") (citation omitted); *Donovan v. Bierwirth*, 754 F.2d 1049, 1055-57 (2d Cir. 1985); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 302 (7th Cir. 1985) ("The enforcement provisions of ERISA are intended to provide the

Secretary, as well as participants and beneficiaries, with broad, flexible remedies to redress or prevent statutory violations.").

Defendants seem to think that anything "a plan obligates" is "appropriate" (Br. 32), regardless of the remedies that § 1109 says a fiduciary "shall" be responsible for. Under their view, a plan document could, for example, cap damages against a party in interest or preclude fiduciary removal entirely. Indeed, their *amici* admit as much. Taking Defendants' interpretation of "appropriate" to its logical conclusion, the ESOP Association and American Benefits Council contend that §§ 1132(a)(2) and (3) and 1109 merely provide a "ceiling" for a participant's remedies and thus the Seventh Circuit in *Smith* should have upheld the arbitration clause that prevented fiduciary removal. *See* ESOP Ass'n Br. 12-17 & n.9. That interpretation cannot be squared with §§ 1132(a) and 1109(a) and continues to flout § 1104(a)(1)(D)'s prohibition on plan provisions that conflict with ERISA. ERISA's reticulated remedial scheme is not a menu from which a plan sponsor can pick and choose the relief it will deign to give participants.[6]

---

[6] *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013), does not counsel otherwise. *Contra* ESOP Ass'n Br. 15-16. The reason that "hewing to the parties' exchange yield[ed] 'appropriate'" relief there was because of the specific remedy at issue: an equitable lien *by agreement*. 569 U.S. at 98. "[T]hat kind of lien—as its name announces—both arises from and serves to carry out a contract's provisions." *Ibid.* That reasoning has no bearing on the remedies Mr. Cedeno seeks.

*Second*, Defendants misread the Supreme Court's decisions and mostly ignore this Court's. *See* Br. 35-40. They cite *LaRue*'s holding that, for defined contribution plans, ERISA "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256. They take that line out of context to argue that in the defined contribution context, plans may limit monetary remedies to the claimant's individual account.

*LaRue* supports the district court's holding. *See* A279 ("*LaRue* reiterated the foundations of *Russell*: the language of § 409(a) emphasizes relief *to the plan*, and the legislative purpose was to prevent 'misuse and mismanagement of plan assets by plan administrators.'") (quoting *LaRue*, 552 U.S. at 254) (emphasis in original). *LaRue* addressed a claim that the fiduciaries failed to obey the plaintiff participant's directions about how to invest his account. Even though that fiduciary breach impacted only the plaintiff's account, the Supreme Court held that the plaintiff could recover under § 1109. "Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *LaRue*, 552 U.S. at 256. Either way, the loss is an injury *to the plan*. *Ibid.* ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"). The Court's holding that

§ 1132(a)(2) permits claims even where only an individual account actually lost money "broadens, rather than limits, the relief available under" ERISA. *Schering Plough*, 589 F.3d at 595 n.9; *see* A280 ("*LaRue* makes clear that relief is available wherever it would advance the protection of the entire plan."). *LaRue* therefore does not limit the plan-wide remedies that are otherwise available under the statute. *See LaRue*, 552 U.S. at 261 (Thomas, J., concurring in the judgment) ("§§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach") (emphasis in original).

This Court's precedents foreclose Defendants' argument that, in the defined-contribution context, relief under § 1109 is somehow not on behalf of the plan as a whole. The Court has explained that "Sections [1132](a)(2) and [11]09, read together, mean that a plaintiff suing for breach of fiduciary duty under § [1132](a)(2) may seek recovery only for injury done to the wronged plan." *Cooper*, 990 F.3d at 180 (citing *LaRue*). The fact that "recovery inuring to the Plan may ultimately benefit particular participants . . . 'does not convert their derivate suit into an action for individual relief.'" *L.I. Head Start Child Development Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57, 66 (2d Cir. 2013) (citation omitted). Contrary to Defendants' suggestion, "'a defined contribution plan is not merely a collection of unrelated accounts.'" *Milgram v. Orthopedic Assoc. Defined*

37

*Contribution Pension Plan*, 666 F.3d 68, 74 (2d Cir. 2011) (quoting *LaRue*, 552 U.S. at 262 (Thomas, J., concurring in the judgment)).

Other circuits agree. As the Third Circuit concisely put it, the "contention that *LaRue* establishes that there are no 'plan claims' in the defined contribution context is incorrect." *Schering Plough*, 589 F.3d at 595 n.9; *see also Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1093 (9th Cir. 2018) (*LaRue* "made clear that it had not reconsidered its longstanding recognition that it is the plan, and not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan"); *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016) (citing *LaRue*, then explaining that "the 'loss [] to the plan' is the amount that the ESOP overpaid" and "[c]onsequently, the losses suffered by the participants in the ESOP are coterminous with those of the plan") (second alteration added).

Any other position would flatly contradict § 1109(a)'s text, which speaks in terms of "the plan" without distinguishing (or even mentioning) different types of benefit plans. 29 U.S.C. § 1109(a). *LaRue* thus does not allow plans to eliminate remedies with plan-wide effect.

Defendants say that "multiple appellate courts" support their view of *LaRue*, citing just *Smith* and the Ninth Circuit's unpublished summary disposition in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019). Br. 40. Not so.

*Smith* opined that *LaRue* means that "individualized arbitration [is not] inherently incompatible with ERISA." 13 F.4th at 622. That was *dicta*—the Seventh Circuit "h[e]ld only that the 'effective vindication' exception bars application of the plan's arbitration provision to claims under § 1132(a)(2)." *Id.* at 623. If anything, the court's analysis makes clear that ERISA does not permit limits on any "plan-wide remedies." *Id.* at 622. The *dicta* means at most that plans and participants might permissibly bargain away "plan-wide representation" like actual class action procedures, so long as in arbitration the individual may obtain all the "plan-wide remedies" ERISA authorizes. *Ibid.*; *see supra* pp. 30 (explaining that courts have allowed individual participants to recover plan-wide relief without using Rule 23). But that does not mean that plans can eliminate ERISA's remedies. And in all events, Defendants' incorrect reading of *Smith* would conflict with the decisions of this Court that already settled the proper reading of *LaRue*.

*Dorman* is both distinguishable and poorly reasoned. *Dorman* permitted individual arbitration of fiduciary breach claims seeking relief under § 1132(a)(2). 780 F. App'x at 514. But as the Seventh Circuit noted in *Smith*, the *Dorman* arbitration provision did not limit the remedies the plaintiff could pursue in arbitration. *See* 13 F.4th at 623; A282 n.5; *Dorman v. Charles Schwab & Co. Inc.*, No. 17-cv-00285-CW, 2018 WL 467357, at *2 (N.D. Cal. Jan. 18, 2018) (reciting arbitration provision); *cf. Am. Express*, 570 U.S. at 236 (provision is invalid if it

waives "*right to pursue* statutory *remedies*") (second emphasis added). The *Dorman* plaintiff could still pursue any remedy available under the statute. Nothing in the provision purported, for example, to limit disgorgement to the plaintiff's *pro rata* share or preclude other remedies with plan-wide effect, such as injunctive relief or fiduciary removal. *Dorman* thus has no bearing on the arbitration provision here, which explicitly bars any remedy on behalf of someone other than Mr. Cedeno. *See Dorman*, 780 F. App'x at 513-14 (addressing only individual versus class arbitration issue).[7]

Defendants' broader reading of the unpublished *Dorman* disposition is also inconsistent with the Ninth Circuit's published decision in *Munro*. 896 F.3d at 1093-94. *Munro* held that, "even when the plan is a defined contribution plan," relief under ERISA inures to "the plan, and not the individual beneficiaries and participants." *Id.* at 1093; *see id.* at 1094 ("recovery under ERISA § 409(a) is recovery singularly for the plan"). To that end, *Dorman* offered essentially no reasoning for its conclusion aside from uncritically citing *LaRue*. Even if it were on point, it should not be followed.

---

[7] Defendants misrepresent *Smith* in stating that "the Seventh Circuit said it saw 'no conflict' between its decision and *Dorman*." Br. 41. The reason the Seventh Circuit saw no conflict was solely because the *Dorman* arbitration clause was different: "The arbitration provision in that case, as far as we can tell, lacked the problematic language present here." *Smith*, 13 F.4th at 623 (citing *Dorman*, 2018 WL 467357, at *2).

The circuits, including this one, thus take a uniform view of § 1109 that follows straight from the statutory text. A participant sues on behalf of the plan to obtain relief for the plan. Defendants' arbitration clause is inconsistent with that authorization and is therefore invalid.

### 3. Defendants do not address multiple equitable remedies that alone render the arbitration provision invalid

Although the district court focused on plan-wide monetary relief, the arbitration provision also prevents Mr. Cedeno from pursuing multiple equitable remedies authorized by ERISA. *See, e.g.*, *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) ("An appellate court is 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'") (citation omitted).[8] Potential equitable relief under § 1132(a)(2) and (a)(3) includes rescinding the unlawful transactions, invalidating the indemnification agreement, an injunction against dissipating or transferring assets that rightfully belong to the plan (namely Defendants' ill-gotten gains and the losses that Defendants must restore to the plan),

---

[8] Mr. Cedeno's opposition likewise focused on plan-wide monetary relief as its primary example of a remedy that cannot be waived, but he also pointed out that he was seeking other remedies. *See* Pl.'s Opp. 3-4. Raising the "prospective waiver" argument is enough to preserve these other examples as well. And in all events, "the appellee need not rely on arguments it made below." *United States v. Aldi*, 101 F.3d 682, at *2 n.1 (2d Cir. 1996) (unpublished); *see, e.g.*, *Blanton v. State Univ. of N.Y.*, 489 F.2d 377, 382 n.7 (2d Cir. 1973) (citing *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970)).

41

appointing an independent fiduciary, and removing any breaching fiduciary. 29 U.S.C. §§ 1109(a), 1132(a)(2), (a)(3); *see Russell*, 473 U.S. at 142. Those remedies are unavailable under the arbitration provision because they would provide "relief" to someone "other than" Mr. Cedeno and would be "binding" beyond Mr. Cedeno. A105-A106.

The Seventh Circuit's reasoning in *Smith* is on all fours here. The plaintiff there sought relief under 29 U.S.C. § 1109, and the pertinent arbitration provisions were word-for-word the same as the quoted portions of Defendants' provision above. *See* 13 F.4th at 616, 618. The Seventh Circuit explained that an arbitration agreement may not "'forbid[] the assertion of certain statutory rights.'" *Id.* at 621 (quoting *Am. Express*, 570 U.S. at 236). That principle invalidated the arbitration clause. "[T]he plain text of § 1109(a) and the terms of the arbitration provision cannot be reconciled: what the statute permits, the plan precludes." *Ibid.* The court focused on § 1109(a)'s authorization of fiduciary removal and the appointment of a new independent fiduciary, which "would go beyond just Smith and extend to the entire plan, falling exactly within the ambit of relief forbidden under the plan." *Ibid.*; *see id.* at 622-23. Removing a fiduciary and appointing an "independent one cannot have anything *but* a plan-wide effect." *Id.* at 622 (emphasis in original); *see Russell*, 473 U.S. at 142 (holding that the phrase "removal of such fiduciary" in § 1109 is "an example of the kind of 'plan-related' relief provided by the more specific clauses it

42

succeeds"). The provision was therefore invalid. *Id.* at 623; *see Harrison*, 2022 WL 909394, at *5 (following *Smith* regarding "substantively identical" ERISA claims and arbitration provision).

Defendants are wrong that *Smith* "has no bearing whatsoever on this case." Br. 41. On the contrary, *Smith* applies directly here, where Mr. Cedeno seeks appointment of an independent fiduciary and removal of any breaching one. Compl. ¶¶ 97-98 (A31), 103 (A32), 104 (A33), 112-113 (A34); Prayer for Relief ¶ E (A41). Although Argent is no longer the ESOP's trustee (A172), the selling shareholders control their new hand-picked trustee, whom they may remove and replace at their own discretion anytime they please (A24, A56). The same inherent conflicts that Mr. Cedeno alleges infected Argent's decision-making are present with respect to the new trustee as well. *Smith*'s discussion of these remedies is thus squarely on point.

*Smith*'s controlling rationale applies equally to the other equitable and injunctive remedies that Mr. Cedeno seeks. Rescinding the ESOP transactions, invalidating the indemnification agreement, and an injunction against dissipating or transferring assets that rightfully belong to the plan also "cannot have anything *but* a plan-wide effect." *Smith*, 13 F.4th at 622; *see ibid.* (quoting arbitration restriction that is identical to Defendants', *see* A105). For instance, the indemnification agreement cannot be unenforceable respecting Mr. Cedeno but enforceable respecting everyone else. Yet Mr. Cedeno cannot void the indemnification agreement

under the arbitration clause. The same goes for Mr. Cedeno's requests for injunctive relief and to rescind the transactions. The arbitration clause's effort to prevent Mr. Cedeno from seeking each of these remedies "acts as a 'prospective waiver of a party's right to pursue statutory remedies'" and is therefore unenforceable on this basis alone. *Smith*, 13 F.4th at 621 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

### D. The Arbitration Provision Is Expressly Non-Severable, So The Whole Provision Falls.

Because the arbitration provision here eliminates Mr. Cedeno's "right to pursue statutory remedies," the whole provision is invalid. *Am. Express*, 570 U.S. at 236 (emphasis omitted). By the provision's own terms, the invalidity of its remedy-restriction requirements means that "the entire Arbitration Procedure shall be rendered null and void in all respects." A106; *see* Br. 11 (conceding this point). Apparently, restricting remedies was more important to Defendants than actually arbitrating the claims. This Court should accordingly affirm the district court's denial of Defendants' motion to compel.

## II. ALTERNATIVELY, THE ARBITRATION CLAUSE CANNOT BE ENFORCED BECAUSE MR. CEDENO DID NOT CONSENT TO ARBITRATE HIS CLAIMS

Because the arbitration provision eliminates statutory remedies, it is un-enforceable, and this Court need not go any further. But the Court can also affirm on the alternative basis that Mr. Cedeno's claims are not arbitrable because he did not

consent to arbitrate them. *See, e.g.*, *Gmurzynska*, 355 F.3d at 210; Pl.'s Opp. 15-19 (raising this issue).

Consent is a fundamental requisite under the FAA. Nothing in ERISA displaces that requirement. And Mr. Cedeno did not in any way manifest his consent. Defendants did not dispute in the district court that Mr. Cedeno did not even have notice of the provision until after he filed suit. He cannot possibly have agreed to a provision he didn't even know about. Without Mr. Cedeno's consent, there can be no agreement to arbitrate.

## A.     The FAA Requires Mutual Consent To Arbitrate.

"The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus*, 139 S. Ct. at 1415 (cleaned up). Such mutual assent is a "'foundational FAA principle.'" *Ibid.* (citations omitted). The Supreme Court has been unwavering on this point, emphasizing that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citation omitted). Although consent might manifest itself in a variety of ways and the provision need not result from an arm's-length transaction, there must be *some* indication that both sides of the transaction agreed that an arbitrator should resolve the dispute.

Because the FAA requires mutual consent to arbitrate, courts have repeatedly rejected attempts to impose arbitration unilaterally. *See, e.g.*, *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 289, 292-93 (4th Cir. 2022) (holding that an arbitration clause was "illusory" because the company reserved the right to make unilateral changes); *Hamilton Park Health Care Ctr., Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 865 (3d Cir. 2016) ("Our starting principle is not that parties can be forced to arbitrate unless they agree otherwise, but rather that if a party has not agreed to arbitrate, the courts have no authority to mandate that it do so.") (cleaned up); *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 782-83 (7th Cir. 2014) (holding that where one party "retain[s] the sole, unilateral discretion" to impose or modify an arbitration provision, the provision is "illusory" and therefore invalid); *Morrison v. Amway Corp.*, 517 F.3d 248, 254-55 (5th Cir. 2008) ("[I]f the defendant-employer retained the right to 'unilaterally abolish or modify' the arbitration program, then the agreement to arbitrate was illusory and not binding on the plaintiff-employee.") (emphasis omitted); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (joining "other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (concluding that unfettered discretion in choosing the nature of an arbitral forum combined with

reservation of the right to alter the applicable rules and procedures without any obligation to notify or seek consent from the other party renders a promise to provide an arbitral forum illusory).

This touchstone FAA principle means that Defendants cannot force Mr. Cedeno to arbitrate if he has not consented to arbitrate. Mr. Cedeno explained that he was not provided notice of the arbitration provision until after the lawsuit. Pl.'s Opp. 15-16. Defendants did not even try to dispute those facts. *See* Reply Mem. in Support of Defs.' Mot. to Compel Individual Arbitration and Stay the Case ("Defs.' Reply") 7, ECF Doc. 68. Nor can they explain how someone who was not even aware of the arbitration provision could have agreed to anything in it.

### B. Nothing In ERISA Overrides The FAA's Consent Requirement.

In the district court, Defendants did not deny that the FAA generally requires consent, and they implicitly conceded that Mr. Cedeno did not personally consent to arbitrate his claims. Instead, they argued that ERISA creates a special rule where, despite everything the Supreme Court and this Court have said about the FAA, a party *can* be coerced into arbitration. Specifically, they contended that ERISA implicitly overrides the FAA's consent requirement by either making individual consent unnecessary or deeming consent to have occurred. Defendants misunderstand both ERISA and the FAA.

### 1. ERISA should be interpreted to preserve the FAA's consent requirement

Nothing in ERISA's text, legislative history, or purpose justifies forcing participants to arbitrate against their will. Far from it, the Congressional findings and statement of policy for ERISA expressly state that the act was adopted to "protect" participants' interests by securing "ready access to the Federal courts." 29 U.S.C. § 1001(b); *see* 29 U.S.C. § 1132(e); 1974 U.S.C.C.A.N. 4639, 4665 (recognizing that "jurisdictional and procedural obstacles" had "hampered effective enforcement of fiduciary responsibilities"). And Congress forbade plans to "contract around the statute." *Esden*, 229 F.3d at 173 (citing 29 U.S.C. § 1104(a)(1)(D)).

Notwithstanding those provisions, this Court has held that ERISA claims are generally arbitrable, but that is only because an independent federal statute, the FAA, codified a federal policy favoring arbitration. *See Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 118-19 (2d Cir. 1991); *Chappel v. Laboratory Corp. of Am.*, 232 F.3d 719, 725 n.4 (9th Cir. 2000) ("Without the FAA's strong policy in favor of arbitration to tip the scales, an ERISA plaintiff might more easily show that an ERISA-governed plan's arbitration clause is unenforceable because it conflicts with statutory provisions or regulations governing the judicial review of benefits determinations under ERISA.").

The backstop to the FAA's mandate, however, is demanding consent. That ensures that ERISA participants, like other contracting parties, forgo their

statutorily-guaranteed judicial forum only *when they agree to forgo it*. Defendants cannot invoke the FAA to protect their arbitration clause, then jettison the part of the FAA they don't like. *See* 29 U.S.C. § 1144(d) (ERISA does not "alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law").

Defendants thus distort both statutes in using ERISA to displace the FAA's consent requirement. The Court should reject Defendants' gambit.

## 2. Defendants' efforts to use ERISA to unilaterally impose arbitration are meritless

Despite ERISA's text, legislative history, and purpose, Defendants attempted in the district court to use ERISA to unilaterally impose arbitration in two ways. First, they argued that participant consent is irrelevant because ERISA makes plan amendments binding without notice or consent. Second, they argued that even if individual participant consent were required, a plan participant effectively consents by participating in the plan. Each argument is meritless.

a. Defendants contended that ERISA plan provisions must be enforced as written, regardless of the participant's notice or consent. *E.g.*, Defs.' Reply 7. That argument simply ignores the FAA without any justification. Plan provisions might

be binding in other contexts without notice or consent. But the FAA itself requires consent, and ERISA does not undo that requirement.

Defendants' position is nothing more than a naked request to approve what the FAA forbids: unilateral imposition of arbitration provisions. According to Defendants, when Mr. Sasson adopted the Plan document on Strategic's behalf (A113), that settled the matter—that unilateral action decided for Defendants, for the Plan, and for participants suing on the Plan's behalf whether to arbitrate. Neither the Supreme Court nor this Court, however, has ever upheld such a unilaterally-imposed arbitration provision. On the contrary, the FAA rejects arbitration-by-force. *See, e.g.*, *Stolt-Nielsen*, 559 U.S. at 681 ("arbitration 'is a matter of consent, not coercion'") (citation omitted); *Bird*, 926 F.2d at 122 ("If such agreements are the result of unequal bargaining power between the parties, general principles of contract law will bar enforcement.").

Defendants thus cannot choose arbitration for both themselves and the plaintiff. And the only way to avoid this problem—to "harmonize[]" ERISA and the FAA—is to require the participant's consent to arbitration as well. *Epic Sys.*, 138 S. Ct. at 1624. Otherwise, unilaterally-imposed arbitration would be permitted under ERISA, but forbidden in every other context. That would create dissonance, not

harmony, between the statutes. The Court should not eliminate the FAA's consent requirement for ERISA claims.

b. Defendants also asserted below that Mr. Cedeno effectively consented to the arbitration provision by participating in the Plan. They analogized to non-FAA cases where courts found that "plan terms (like forum-selection clauses) bind participants, even when participants do not negotiate or affirmatively consent to terms." Defs.' Reply 7. Those decisions did not involve the FAA, and, in any event, they actually make clear that consent cannot occur without notice.

The idea behind these cases is the same as any adhesion contract: if you have notice of the provision and proceed anyway, you consent whether or not it was "the product of an arms-length transaction." *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause contained on the back of a cruise ticket)). But consent is not automatic. The concept of assent by performance arose from the notion that a person would not perform her end of the deal if she did not want to agree to the contract. Thus, it can be inferred only where a party was "given notice of the . . . provision" and "retained the option of rejecting the contract with impunity." *Carnival Cruise Lines*, 499 U.S. at 595; *see Aegon*, 769 F.3d at 930 ("The logic [set forth in *Carnival Cruise Lines*] supporting enforcement of such clauses applies equally to the venue selection clause [in an ERISA plan]."). But here

Defendants do not deny that Mr. Cedeno lacked notice of the arbitration provision. And Mr. Cedeno's "performance" was passive—it only required continuing to work at Strategic and provided no sign that Mr. Cedeno ever knew about the terms to which he purportedly agreed. Without that notice, his continued participation in the Plan cannot signal consent.[9]

The one ERISA arbitration case Defendants cited is the Ninth Circuit's unpublished summary disposition in *Dorman* that stated: "A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." Defs.' Mot. to Compel 9 (quoting *Dorman*, 780 F. App'x at 512). Defendants did not elaborate on *Dorman*'s reasoning—likely because it is cursory, unpersuasive, and contrary to a published Ninth Circuit decision.

*Dorman* thought that participant consent is irrelevant because a claim under 29 U.S.C. § 1132(a)(2) "belong[s] to a plan—not an individual." 780 F. App'x at 513. So, in the court's view, "[t]he relevant question is whether the Plan agreed to

---

[9] The Supreme Court did not explicitly address notice or consent in *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99 (2013), *see* Defs.' Reply 7, but it did explain that "the parties *have agreed* by contract to commence the limitations period at a particular time." *Id.* at 106 (emphasis added). Mr. Cedeno did not agree to arbitrate.

arbitrate." *Ibid.* The court did not explain further or attempt to square its holding with the FAA or ERISA.

A published Ninth Circuit decision, however, explains why that conclusion is flawed: although the participant sues on behalf of the plan, she maintains a personal stake in a § 1132(a)(2) claim—and thus she cannot be forced to arbitrate unless she personally agreed to do so. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006). In *Comer*, the defendant argued that because the plan had agreed to arbitration and § 1132(a)(2) claims are representative in nature, the plaintiff was also bound by the arbitration clause. *Id.* at 1102-03. The Ninth Circuit disagreed, recognizing that a § 1132(a)(2) "claimant *also* sues in a non-derivative capacity" and that "the cause of action belong[s] to the individual plaintiff." *Id.* at 1103 (emphasis in original); *see also* 29 U.S.C. § 1132(a)(2), (3) (granting a "participant" the right to sue); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (explaining that § 1132(a)(2) plaintiffs must seek to vindicate a personal interest, even though they sue on behalf of the plan). And because the Ninth Circuit found no basis to say that the plaintiff himself consented to arbitrate, it affirmed the denial of the defendant's motion to compel arbitration. 436 F.3d at 1103-04. The unpublished *Dorman* disposition did not

acknowledge *Comer*'s precedential holding. The Ninth Circuit thus *does* require the participant's consent to arbitrate claims under § 1132(a)(2).

That is the exact circumstance at issue here. Under the plain language of the statute, the cause of action is personal to Mr. Cedeno himself even though he seeks relief for the Plan.[10] *See* 29 U.S.C. § 1132(a) (authorizing "a participant" to sue). Accordingly, he seeks to vindicate a *personal* statutory right while suing on the Plan's behalf. *See Russell*, 473 U.S. at 142 n.9 (noting that despite suing "in a representative capacity on behalf of the plan," participants have a "common interest shared by all four classes [of plaintiffs authorized to sue under § 1132(a)(2)] in the financial integrity of the plan"). His consent is thus required.

Mr. Cedeno's consent is likewise necessary for his claim under § 1132(a)(3). Section 1132(a)(3) is a "'catchall'" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not

---

[10] Because Mr. Cedeno seeks relief for the Plan, it is *also* necessary for the Plan to have agreed to arbitrate. *See Hawkins v. Cintas Corp.*, 32 F.4th 625, 633 (6th Cir. 2022) (affirming denial of motion to compel arbitration of § 1132(a)(2) claims because "an arbitration agreement that binds only individual participants cannot bring such claims into arbitration"). Defendants may attempt to mischaracterize the Sixth Circuit's opinion as supporting their position that a participant's consent is irrelevant as long as the plan document contains an arbitration provision. But that is not what the court held. *See id.* at 637 ("But we need not, and do not, decide whether an arbitration provision in the plan documents would subject § 502(a)(2) claims to arbitration."). In any event, Defendants have not shown that the Plan gave valid consent to arbitrate claims of fiduciary breach brought on its behalf, and the existence of a plan term mandating arbitration does not automatically carry Defendants' burden to demonstrate Plan consent.

elsewhere adequately remedy." *Varity*, 516 U.S. at 512. Here, for example, Mr. Cedeno seeks various equitable remedies from the selling shareholders, including accounting for profits, constructive trust, and rescission of the ESOP transaction. A36-A37; *see* 29 U.S.C. § 1132(a)(3) (authorizing "other appropriate equitable relief" to redress "any act or practice which violates" ERISA). That relief is unquestionably sought in Mr. Cedeno's personal capacity. *See Varity*, 516 U.S. at 510-13. And thus his consent to arbitrate is unquestionably required.

Moreover, dispensing with participant consent would clash with the purpose behind empowering participants to sue to protect the plan. As the Supreme Court has acknowledged, ERISA fiduciaries "may have financial interests adverse to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Although a "fiduciary" also may file suit under § 1132(a)(2) and (a)(3), a plan will often be unable to protect itself via a fiduciary suit because—as here—the culpable party *is* the fiduciary or an insider who controls the fiduciary. In these circumstances, the fiduciary will be unable or unwilling to sue to protect the plan, and participant suits fill the gap as an "essential tool[] for accomplishing the stated purposes of ERISA." *Pilot Life*, 481 U.S. at 52; *see Smith v. GreatBanc Tr. Co.*, No. 20-C-2350, 2020 WL 4926560, at *3 (N.D. Ill. Aug. 21, 2020) ("'Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse.'") (citation omitted), *aff'd*, 13

F.4th 613. Because it is the participant who then sues to vindicate the plan's interests,

requiring the participant's consent is warranted.

## CONCLUSION

This Court should affirm.

Dated: June 3, 2022                          Respectfully submitted.

                                              /s/ Peter K. Stris 

Tillman J. Breckenridge                      Peter K. Stris
STRIS & MAHER LLP                            Rachana A. Pathak
1717 K Street, NW, Suite 900                 Douglas D. Geyser
Washington, DC 20006                         John Stokes
                                             STRIS & MAHER LLP
                                             777 S. Figueroa Street, Suite 3850
                                             Los Angeles, CA 90017
                                             T: (213) 995-6800
                                             F: (213) 261-0299
                                             pstris@stris.com

Gregory Y. Porter
Ryan T. Jenny
Bailey & Glasser, LLP
1055 Thomas Jefferson St NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

I, Peter K. Stris, hereby certify that this document complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) as it contains 13,143 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this document complies with the format, typeface, and type-style requirements of Rules 32(a)(4)-(6).

Dated: June 3, 2022                          /s/ Peter K. Stris
                                             Peter K. Stris
                                             STRIS & MAHER LLP

                                             *Counsel for Plaintiff-Appellee*