# 21-2891

## In the United States Court of Appeals

### FOR THE SECOND CIRCUIT

RAMON DEJESUS CEDENO,

*Plaintiff – Appellee*,

v.

RYAN SASSON, ARGENT TRUST COMPANY, DANIEL BLUMKIN, IAN BEHAR, STRATEGIC FINANCIAL SOLUTIONS, LLC, DUKE ENTERPRISES LLC, TWIST FINANCIAL LLC, BLAISE INVESTMENTS LLC,

*Defendants – Appellants*.

On Appeal from the United States District Court for the
Southern District of New York, No. 20-cv-9987, Hon. John G. Koeltl

## REPLY BRIEF OF APPELLANTS

GROOM LAW GROUP, CHARTERED
Lars C. Golumbic
Michael J. Prame
Sarah M. Adams
Paul J. Rinefierd
1701 Pennsylvania Avenue, NW,
  Suite 1200
Washington, DC  20006
(202) 857-0620

*Counsel for Argent Trust Company*

MORGAN, LEWIS & BOCKIUS LLP
Jeremy P. Blumenfeld
Margaret M. McDowell
Jared R. Killeen
Antonia M. Moran
1701 Market Street
Philadelphia, PA  19103
(215) 963-5000

Michael E. Kenneally
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

*Counsel for Ryan Sasson, Daniel Blumkin, Ian Behar, Duke Enterprises LLC, Twist Financial LLC, Blaise Investments LLC, and Strategic Financial Solutions, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 4

I.    The FAA Requires Enforcement of the Plan Document's
      Individualized Arbitration Provision. ................................................... 4

      A.    ERISA Gives a Defined Contribution Plan Participant a
            Substantive Right Only to the Participant's Own Individual
            Account ................................................................................... 5

      B.    ERISA § 502(a)(2) Does Not Give Participants a Substantive,
            Unwaivable Right to Seek Recovery for Other Participants ............... 8

            1.    *Russell* Does Not Apply to Defined Contribution Plans. .......... 9

            2.    Plaintiff and DOL Conflate Recovery for an Account in
                  the Plan with Recovery for the Entire Plan ............................ 11

      C.    The Ability to Represent Other Plan Participants Is a Procedural
            Right and Thus Waivable. ........................................................... 13

      D.    ERISA's Equitable Remedies Do Not Support Invalidating the
            Arbitration Provision. ................................................................. 16

            1.    Enforcing the Arbitration Provision Here Does Not
                  Render Plan-Wide Remedies Unavailable ............................. 18

            2.    All the Remedies Plaintiff Seeks for Himself Are
                  Potentially Available in Arbitration ....................................... 19

II.   Plaintiff Is Bound by the Plan's Arbitration Provision Under Both
      ERISA and the FAA. ...................................................................... 24

CONCLUSION ............................................................................................. 27

CERTIFICATE OF COMPLIANCE ............................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................. 5

*Armijo v. Prudential Ins. Co. of Am.*,
    72 F.3d 793 (10th Cir. 1995) .................................................. 23

*Chappel v. Lab'y Corp. of Am.*,
    232 F.3d 719 (9th Cir. 2000) .................................................. 25

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006) ................................... 2, 8, 15, 16

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021) ............................................... 8, 11

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ................................................................ 24

*Dorman v. Charles Schwab Corp.*,
    780 F. App'x 510 (9th Cir. 2019) ...................................... 7, 25

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ..................................................... 2, 3, 8

*Fisher v. JPMorgan Chase & Co.*,
    303 F. App'x 979 (2d Cir. 2008) ............................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................... 18, 19

*Hawkins v. Cintas Corp.*,
    32 F.4th 625 (6th Cir. 2022) ............................................. 9, 12

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013) ........................................................... 24, 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Herman v. S.C. Nat'l Bank*,
    140 F.3d 1413 (11th Cir. 1998) ...........................................................................14

*Holmes v. Baptist Health S. Fla., Inc.*,
    No. 21-cv-22986, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022) .........................20

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)..........................................................................................6

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017)................................................................................3, 26

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008)..................................................................................*passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)..................................................................................*passim*

*Mathews v. Sears Pension Plan*,
    144 F.3d 461 (7th Cir. 1998) .............................................................................26

*Metro Indus. Painting Corp. v. Terminal Constr. Co.*,
    287 F.2d 382 (2d Cir. 1961) ..............................................................................23

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)............................................................................................23

*PacifiCare Health Sys., Inc. v. Book¸*
    538 U.S. 401 (2003)....................................................................................22, 23

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) .............................................................................15

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) .............................................................................25

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) .............................................................8, 10, 17, 25

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) ...................................................................6, 14

*Viking River Cruises, Inc. v. Moriana*,
142 S. Ct. 1906 (2022) ................................................................*passim*

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
515 U.S. 528 (1995) ............................................................................23

*Williams v. Dearborn Motors 1, LLC*,
No. 20-1351, 2021 WL 3854805 (6th Cir. Aug. 30, 2021) ...............19

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ..............................................................17

STATUTES

Age Discrimination in Employment Act
29 U.S.C. § 621 *et seq.* ......................................................................18

California's Private Attorneys General Act
Cal. Labor Code § 2698 *et seq.*............................................13, 14, 16

Employee Retirement Income Security Act of 1974
29 U.S.C. § 1001 *et seq.* ...............................................................*passim*
29 U.S.C. § 1002 (ERISA § 3) ............................................................5
29 U.S.C. § 1024 (ERISA § 104) ......................................................24
29 U.S.C. § 1054 (ERISA § 204) ........................................................5
29 U.S.C. § 1102 (ERISA § 402) ......................................................24
29 U.S.C. § 1103 (ERISA § 403) ......................................................11
29 U.S.C. § 1109 (ERISA § 409) .................................................*passim*
29 U.S.C. § 1132 (ERISA § 502) .................................................*passim*
29 U.S.C. § 1144 (ERISA § 514) ........................................................8

RULES

FED. R. APP. P. 23............................................................................2, 13, 15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**OTHER AUTHORITIES**

*Restatement (Second) of Judgments* § 84 (1982)......................................................21

Sec'y of Labor's Opp'n to Pl.'s Mot. for a Prelim. Inj. & Appointment of a
Special Master, *Ruane, Cunniff & Goldfarb, Inc. v. Payne*,
No. 19-cv-11297 (S.D.N.Y. Jan. 24, 2020), ECF No. 40...................................10

## INTRODUCTION

The District Court denied Defendants' motion to compel individual arbitration on the theory that "the right under [ERISA] §§ 409(a) and 502(a)(2) to recover for the Plan as a whole" is "not waivable." A286. But under a long line of precedent, the FAA upholds contractual waivers of a prospective plaintiff's procedural right to pursue recovery on behalf of other potential plaintiffs. To avoid this precedent and support the District Court's ruling, Plaintiff must convince the Court that ERISA gives a participant in a defined contribution plan (like the Plan here) a *substantive* right to plan-wide recovery of plan losses and improper fiduciary profits beyond those that are allocable to the participant's own individual account. He cannot come close to doing so.

Both ERISA and Supreme Court precedent recognize that the substantive right of a defined contribution plan participant is to the assets in that participant's individual plan account—not the assets in other participants' accounts. If assets should be added to the participant's individual account because of a fiduciary's breach of duty, ERISA §§ 409(a) and 502(a)(2) give the participant a substantive right to seek to have those assets added. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). But nothing in the statute gives a defined contribution plan participant a substantive (and thus unwaivable) right to recover amounts that belong in the accounts of other participants.

1

Plaintiff's contrary argument rests on his selective quotation from *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985). This reliance on *Russell* reveals the lack of support for Plaintiff's position. The Supreme Court, this Court, and Plaintiff's own amicus, the U.S. Department of Labor ("DOL"), have all observed that the language Plaintiff quotes from *Russell* is inapplicable in cases, like this one, that involve a defined contribution plan.

More than that, this Court's precedent confirms that a participant's right to seek plan-wide relief for the accounts of all other plan participants is *procedural* in nature and thus waivable through an agreement for individual arbitration. In *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), this Court determined that such a right is procedural, by determining that § 502(a)(2) requires certain procedures—such as class certification under Rule 23 or similar procedural safeguards to protect other participants' interests—if a plan participant wishes to seek relief on behalf of all plan participants. This procedural component of plan-wide § 502(a)(2) claims resembles procedural rights to collective or aggregate proceedings available under other statutes, which the Supreme Court has unfailingly held may be waived in an individualized arbitration provision. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626-28 (2018).

Indeed, just weeks ago, the Supreme Court reiterated that "the FAA licenses contracting parties to depart from standard rules 'in favor of individualized

arbitration procedures of their own design.'" *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1923 (2022) (quoting *Epic Sys.*, 138 S. Ct. at 1626). Like the arbitration provision upheld in *Viking River*, the provision here preserves a participant's right to bring an individual claim and waives the right to bring a lawsuit that joins together the claims of others. *Viking River* provides further proof of the District Court's legal error.

Given these problems with the District Court's holding, Plaintiff devotes much of his brief to a theory the District Court did not adopt—that he is not bound by the Plan's arbitration provision because he never consented to it. Plaintiff admits that, under ERISA, plan terms normally bind plan participants by virtue of their participation in the plan. Yet he argues that the FAA requires more to make a plan's arbitration provision binding. This argument is backwards.

The FAA *prohibits* heightened standards to form an agreement to arbitrate. *E.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017). It does not *create* heightened standards. The Plan Document's arbitration provision is therefore binding on Plaintiff for the same reason that every other provision in the Plan Document is. Because this alternative argument for affirmance fails as well, the Court should reverse and remand with instructions to compel Plaintiff to arbitrate his claims on an individual basis.

3

## ARGUMENT

### I. The FAA Requires Enforcement of the Plan Document's Individualized Arbitration Provision.

As the Supreme Court reaffirmed last month, whether the FAA requires enforcing an arbitration provision depends on whether the provision seeks to "alter or abridge substantive rights" or "merely changes how those rights will be processed." *Viking River*, 142 S. Ct. at 1919. A "substantive" right cannot be waived in an arbitration agreement, but a "procedural" right can. *Id.* at 1919-23.

Plaintiff has no unwaivable substantive right under ERISA to recover for the accounts of other Plan participants. On the contrary, the Supreme Court has recognized that a participant in a defined contribution plan has a substantive right to the participant's *individual account*. The Supreme Court has also recognized that *Russell*, the case Plaintiff cites to try to show a substantive right to *plan-wide* recovery, is inapplicable to defined contribution plan cases like this. The ability to pursue plan-wide recovery is instead a waivable procedural mechanism to join absent participants' claims together through procedures designed to protect their interests. That is exactly the sort of procedure that can be waived through an individualized arbitration provision.

## A.   ERISA Gives a Defined Contribution Plan Participant a Substantive Right Only to the Participant's Own Individual Account.

In the context of a defined contribution plan, ERISA §§ 502(a)(2) and 409(a) "authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue*, 552 U.S. at 256; Defs.' Br. 35-40. After *LaRue*, there is no dispute that a participant in a defined contribution plan can bring a viable claim under §§ 502(a)(2) and 409(a), even when the recovery sought is limited to the participant's individual account rather than all plan accounts.

That is the only right implicated by ERISA §§ 502(a)(2) and 409(a) that falls outside the scope of what can be waived in an arbitration provision. *See Viking River*, 142 S. Ct. at 1919; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). The plain language of ERISA's other provisions and related judicial precedent confine defined contribution plan participants' substantive rights to the assets in that participant's individual account. By definition, a defined contribution plan provides "for benefits based *solely* upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34) (emphasis added). Similarly, a participant's "accrued benefit" in a defined contribution plan is "the balance of the individual's account." *Id.* § 1002(23)(B); *see also id.* § 1054(c)(2)(A), (g). The

Supreme Court has therefore explained that a defined contribution plan participant "is entitled to whatever assets are dedicated to his individual account," not the plan's "general pool of assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999); *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) ("[I]n a defined-contribution plan . . . the retirees' benefits are typically tied to the value of their accounts[.]").

Plaintiff concedes that he has a legal interest only in his individual account. On appeal, for example, he admits that if his claims proceeded in federal court and he prevailed in proving plan-wide losses, he personally would recover only a *pro rata* share allocable to his account. *See* Pl.'s Br. 31-32. Whenever "a defined contribution plan sustains losses, those losses are reflected in the balances in the plan accounts of the affected participants, and a recovery of those losses would be allocated to one or more individual accounts." *LaRue*, 552 U.S. at 262 (Thomas, J., concurring in the judgment).

The Complaint similarly attests to Plaintiff's understanding that each Plan participant has a claim only to the Plan assets that should be in the participant's own account. Plaintiff purports to "bring[] this action to recover the losses incurred by the Plan, and thus by *each individual account* in the Plan held by him and similarly situated participants, resulting from [Defendants' alleged misconduct]." A15 (Compl. ¶ 13) (emphasis added); *see also* A40 (Compl. ¶ 139) ("Plaintiff, like other

Plan participants in the Class, suffered a diminution in the value of his Plan account because [of the alleged misconduct.]").  Plaintiff even asks for "the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered."  A41 (Compl. Prayer ¶ F).

Plaintiff has no substantive right—under §§ 502(a)(2) and 409(a) or otherwise—to recover assets that belong in another participant's retirement account. Instead, § 502(a)(2) gives him a substantive right under ERISA to redress his own claims.  The individualized arbitration provision in Section 17.10 of the Plan Document undisputedly preserves this right:  Plaintiff, like every other Plan participant, can seek in arbitration to recover all "plan losses" and restoration of "any profits" from a breaching fiduciary allocable to his individual Plan account.  Enforcing this provision does not, as Plaintiff contends, allow a fiduciary "to retain proceeds from his own wrongdoing."  Pl.'s Br. 32 (citation omitted).  All Plan participants can file their own arbitrations to pursue their shares of the alleged plan losses and ill-gotten profits.  *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513 (9th Cir. 2019) ("*Dorman II*") ("An agreement to conduct arbitration on an individual basis . . . does not 'relieve a fiduciary from responsibility or liability.'" (citation omitted)).  That is all that §§ 502(a)(2) and 409(a) require.[1]

---

[1]  Plaintiff bizarrely claims that the Plan's arbitration provision completely bars § 502(a)(2) claims.  Pl.'s Br. 28-29.  This contention is refuted by the plain language of Section 17.10(g), which authorizes relief "[i]f a Covered Claim is

**B.**     **ERISA § 502(a)(2) Does Not Give Participants a Substantive, Unwaivable Right to Seek Recovery for Other Participants.**

In Plaintiff's view, ERISA § 502(a)(2) "guarantees" that he can pursue "plan-wide relief." Pl.'s Br. 21. He asserts that "courts regularly allow a single participant" to seek plan-wide recovery under § 502(a)(2). *Id.* at 30. Maybe so, but merely "allowing" such claims does not create a substantive unwaivable right to plan-wide recovery. Plaintiff's argument erroneously rests on an inapplicable case (*Russell*) and

---

brought under ERISA section 502(a)(2) to seek relief under ERISA section 409." A105. Plaintiff's assertion rests on Section 17.10(f), which does not mention § 502(a)(2) claims at all and instead generally provides that "claims 'must be brought solely in the Claimant's individual capacity.'" Pl.'s Br. 28-29 (quoting A105). Plaintiff also invokes *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), and *Coan*, to argue that § 502(a)(2) claims *must* be brought in a representative (rather than individual) capacity. Pl.'s Br. 29. But the *Cooper* majority's tentative statements about hypothetical "tension" between *Coan* and individualized arbitration, which might have arisen had this Court not decided to invalidate the arbitration provision on other grounds, do not help Plaintiff. *Cooper*, 990 F.3d at 184. As discussed in Section I.C below, although *Coan* stated that an individual plaintiff seeking plan-wide remedies must satisfy procedures to ensure the plaintiff "represent[s] adequately the interests of other plan participants," *Coan*, 457 F.3d at 262, that requirement does not arise in an individualized arbitration that, under the Plan Document, *cannot* affect other Plan participants at all. Any such holding would contradict the Seventh Circuit's conclusion that "individualized arbitration" is *not* "inherently incompatible with ERISA." *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021). And it would contradict the Supreme Court's holding in *LaRue* that individualized § 502(a)(2) claims are fully permissible. Moreover, it would create an unwarranted conflict between ERISA and the FAA by requiring procedures inconsistent with the attributes of arbitration, *see, e.g.*, *Epic Sys.*, 138 S. Ct. at 1624, even though ERISA expressly does not take precedence if it conflicts with another federal statute, *see* 29 U.S.C. § 1144(d).

a conflation between recovery for an individual account in a plan and recovery for an entire plan.

### 1.    *Russell* Does Not Apply to Defined Contribution Plans.

Plaintiff and DOL in its amicus brief erroneously suggest that the Supreme Court has recognized a participant's substantive and unwaivable right under ERISA § 502(a)(2) to recover for an entire defined contribution plan and all its participants. To that end, both place enormous weight on statements in *Russell* that (1) § 409(a)'s drafters "were primarily concerned . . . with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary," (2) "recovery for a violation of § 409 inures to the benefit of the plan as a whole," and (3) § 502(a)(2) reveals "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 & n.9; *see* Pl.'s Br. 1, 6, 14, 18, 30; DOL Br. 7, 9, 11.

Their reliance on *Russell* is indefensible.  *LaRue* explicitly clarified "that the 'entire plan' language from *Russell*, which appears nowhere in § 409 or § 502(a)(2), does not apply to defined contribution plans."  *LaRue*, 552 U.S. at 256; *see* Defs.' Br. 37-38.  This Court, like other circuits, has highlighted this clarification:  "*LaRue* held . . . that *Russell*'s requirement of plan-wide recovery was 'beside the point in the defined contribution context.'"  *Fisher v. JPMorgan Chase & Co.*, 303 F. App'x 979, 981 (2d Cir. 2008) (quoting *LaRue*, 552 U.S. at 256); *see also, e.g.*, *Hawkins v. Cintas*

*Corp.*, 32 F.4th 625, 631 (6th Cir. 2022) ("*Russell*'s 'emphasis on protecting the "entire plan" from fiduciary misconduct' no longer applies in the defined-contribution context." (citation omitted)); *Smith*, 13 F.4th at 622 & n.6 ("Because Smith participated in a defined contribution plan, *LaRue*, and not *Russell*, governs[.]"). Yet, remarkably, Plaintiff and DOL never say a word about *LaRue*'s critical clarification.[2]

DOL's argument on this point also contradicts its arguments in other litigation. In one recent case, DOL itself observed that *Russell* is "inapposite" in a defined contribution plan case for exactly this reason:

> [T]he discussion in [*Russell*] limiting relief available under ERISA section 409(a), 29 U.S.C. § 1109(a), to relief that inures to the benefit of the plan as a whole, pre-dates the Court's decision in *LaRue*[.] In *LaRue* the Court specifically notes that its discussion of that topic in *Russell* is generally inapplicable in the defined contribution context where participants have individual accounts. 552 U.S. at 254-56.

Sec'y of Labor's Opp'n to Pl.'s Mot. for a Prelim. Inj. & Appointment of a Special Master at 10-11, *Ruane, Cunniff & Goldfarb, Inc. v. Payne*, No. 19-cv-11297 (S.D.N.Y. Jan. 24, 2020), ECF No. 40. In the *Payne* litigation, DOL recognized that individualized arbitration of fiduciary breach claims involving defined contribution

---

[2] Even on its own terms, *Russell* does not suggest that a participant in a defined contribution plan has a substantive right to recovery beyond the participant's individual account. *Russell* discussed the plan-based nature of relief under ERISA § 502(a)(2) to *reject* the remedy that the participant was seeking. The plaintiff sought extracontractual damages to herself personally—outside the plan—which did not inure to the plan's benefit at all. *Russell*, 473 U.S. at 140, 142. Plaintiff and DOL cannot twist the unavailability of such relief into an affirmative right to recover all plan losses.

plans furthers "the public policy forged in ERISA of allowing participants to recover their illegally compromised retirement savings in a timely manner by holding personally accountable the fiduciaries who held those savings in trust," and that "individual arbitration proceedings may … occur simultaneously without diminishing the independent rights of action of other plan participants or the Secretary." *Id.* at 8, 20. DOL was correct then and is wrong now.

### 2. Plaintiff and DOL Conflate Recovery for an Account in the Plan with Recovery for the Entire Plan.

Plaintiff and DOL also try to conjure a substantive and unwaivable right to plan-wide relief from the fact that the Plan would receive any monetary recovery under ERISA §§ 502(a)(2) and 409(a). Pl.'s Br. 37-38; DOL Br. 11-13. It is true that participants may seek recovery under those statutory sections "only for injury done to the wronged plan," Pl.'s Br. 37 (quoting *Cooper*, 990 F.3d at 180), and that such actions are in this sense brought "on behalf of [the] plan," DOL Br. 11 (emphasis omitted) (quoting *LaRue*, 552 U.S. at 253). By its terms, § 409(a) imposes liability only for "losses to the plan" and profits made "through use of assets of the plan," and requires liable fiduciaries to pay these amounts "to such plan." 29 U.S.C. § 1109(a). That makes sense because all plan assets (even those allocated to participants' individual accounts) are held in trust and owned by the trustees, rather than by plan participants themselves. *Id.* § 1103(a).

For these reasons, the Supreme Court in *LaRue* stated that, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." 552 U.S. at 256. "*LaRue* . . . means that while any claims properly brought under § 502(a)(2) must be for injuries to the plan itself, § 502(a)(2) authorizes suits on behalf of a defined-contribution plan even if the harm is inherently individualized." *Hawkins*, 32 F.4th at 631. The unremarkable fact that a participant sues under § 409(a) to remedy "plan losses"—even when proceeding with respect to the participant's individual account only—does not at all imply that a participant must be allowed to bring suit on behalf of the entire plan and all its participants. *See* Pl.'s Br. 37.[3]

---

[3] Plaintiff similarly mischaracterizes Justice Thomas's *LaRue* concurrence as arguing that ERISA § 502(a)(2) entitles a participant to sue for plan-wide relief. *See* Pl.'s Br. 19, 30, 37-38; *see also* DOL Br. 12. In context, however, Justice Thomas's observation that "§§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach" does not address the availability of plan-wide relief at all. It merely rebuts "*Russell*'s dictum" that only certain *kinds* of plan losses—those that harm or threaten the "entire plan"—are recoverable (and the individual consequential damages to a participant that the plaintiff sought were not plan losses). *LaRue*, 552 U.S. at 260-61 (Thomas, J., concurring in the judgment) (citation omitted). Ultimately, Justice Thomas agreed with the majority that "[b]ecause a defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily 'losses to the plan' for purposes of § 409(a)," and participants may seek to remedy such losses under § 502(a)(2). *Id.* at 262-63.

**C.     The Ability to Represent Other Plan Participants Is a Procedural Right and Thus Waivable.**

While Plaintiff concedes that his ability to serve as a class representative under Rule 23 is a waivable procedural right, Pl.'s Br. 27 & n.4, he argues that ERISA §§ 502(a)(2) and 409(a) give him a distinct, unwaivable right to serve as a representative of the Plan and its participants and seek plan-wide relief. This transparent attempt to evade a wealth of FAA precedent is unsuccessful. *See, e.g.*, Defs.' Br. 16, 26-29 (discussing *Epic Systems*).

The Supreme Court recently reaffirmed that precedent in *Viking River*, which enforced an arbitration provision that waived an individual's statutory right to bring a representative lawsuit on behalf of absent individuals. 142 S. Ct. at 1925. Although the statute at issue in *Viking River* was California's Private Attorneys General Act ("PAGA"), rather than ERISA, the Court's reasoning directly applies to Plaintiff's effort to represent the interests of other plan participants under ERISA § 502(a)(2).

*Viking River* involved an individualized arbitration clause providing that "in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." *Id.* at 1916. The Supreme Court explained that there are two senses in which PAGA claims might be considered "representative." First, "PAGA actions are 'representative' in that they are brought by employees acting as . . . agents or proxies . . . of the State." *Id.* Second, "PAGA claims are also

13

called 'representative' when they are predicated on [statutory] violations sustained by other employees." *Id.* The second of these senses of a "representative" claim, which is "effectively a rule of claim joinder" that would "allow a party to unite multiple claims against an opposing party in a single action," *id.* at 1915, aptly describes the sort of representative § 502(a)(2) claim that Plaintiff wishes to pursue.[4]

The Supreme Court held that by purporting to create an unwaivable mechanism for this sort of "claim joinder," PAGA conflicted with the FAA. The FAA prohibited California from "condition[ing] the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate." *Viking River*, 142 S. Ct. at 1923. The same logic applies here to Plaintiff's argument that ERISA requires plan participants to be able to join the claims of all plan participants. If ERISA creates that sort of claim joinder

---

[4]   At times, Plaintiff seems to assume that his claim is also representative in the first sense, as though he were an agent or proxy of the Plan. Not so. A participant's assertion of a § 502(a)(2) claim does not mean the participant is "legally or contractually appointed to represent the plan" itself in the way that qui tam relators, for example, represent the government as partial assignees of the government's claim or that guardians *ad litem* represent minors. *Thole*, 140 S. Ct. at 1620. That helps explain why an ERISA defendant's defeat of one participant's individual § 502(a)(2) claim does not preclude the Secretary of Labor from bringing a § 502(a)(2) claim based on the same events and theories. *See, e.g.*, *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1424 (11th Cir. 1998).

14

mechanism, it would be a procedural right that, under the FAA, may be waived in an arbitration provision.

*Viking River* also reiterated that the enforceability of an arbitration provision cannot be conditioned on the availability of special procedures for representative litigation, including class-action procedures designed to ensure "adequacy of representation" or "notice" to absent third parties. 142 S. Ct. at 1920-21. This aspect of *Viking River* likewise dooms Plaintiff's conception of unwaivable representative § 502(a)(2) litigation.

In *Coan*, this Court held that a plaintiff who wishes to pursue plan-wide recovery—even if the plaintiff does not seek class certification under Rule 23— "must employ procedures to protect effectively the interests they purport to represent," including procedures showing representative adequacy and notice to absent participants. *Coan*, 457 F.3d at 259, 261-62. This Court reasoned that Congress would not have "intended to allow individual participants and beneficiaries to bring suit on behalf of an employee benefit plan without observing any *procedural safeguards* for other interested parties" such as "notifying or otherwise involving other plan participants." *Id.* at 260-61 (emphasis added); *see also, e.g.*, *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016) ("In theory, there is no difference between plan participants and class members vis-à-vis the need to protect absentees' rights in representative litigation."). Such procedural safeguards are just like the

"procedural characteristics of class actions" that *Viking River* identified as inconsistent with arbitration's traditionally individualized form. *Viking River*, 142 S. Ct. at 1920-21.

Reading *Viking River* together with *Coan* reveals that a participant's ability to bring a plan-wide claim under § 502(a)(2) is like PAGA's "claim joinder" ability. Because PAGA "claim joinder" creates only a procedural right to seek to remedy other individuals' injuries in addition to one's own, so too would any plan-wide § 502(a)(2) claim also rest on a procedural (rather than substantive) right to bring other participants' claims. And, according to *Viking River*, *Epic Systems*, and many other cases, the FAA protects an arbitration agreement's ability to waive such a procedural statutory right. The District Court's contrary ruling that "the right under §§ 409(a) and 502(a)(2) to recover for the Plan as a whole" is "not waivable" under the FAA is wrong as a matter of law and must be reversed. A286.

**D.    ERISA's Equitable Remedies Do Not Support Invalidating the Arbitration Provision.**

In addition to his misguided argument that the right to seek plan-wide monetary recovery under §§ 502(a)(2) and 409(a) is substantive and unwaivable, Plaintiff ventures other theories about how the Plan's arbitration provision improperly limits his ability to seek nonmonetary equitable remedies under the statute. Pl.'s Br. 41-44. Plaintiff admits that he did not develop these theories before

16

the District Court.  Pl.'s Br. 41 n.8.  While the Court should not entertain Plaintiff's new arguments, they are meritless in any event.

First, Plaintiff tries to reinvent this case in the mold of the *Smith* litigation in the Seventh Circuit by asserting for the first time that he wants to remove "any breaching [fiduciary]" and appoint a new replacement.  Pl.'s Br. 43.  *Nowhere* in the Complaint does Plaintiff ask to remove *any* fiduciary.  Each paragraph of the Complaint that he now cites is a vague reference to "appropriate equitable relief" under § 409(a).  Pl.'s Br. 43.  None of these citations even hints at a request to remove Argent or any other fiduciary.  And Plaintiff knew when this lawsuit began that Argent was no longer a plan fiduciary.  A17 (Compl. ¶ 21).  Plaintiff cannot rewrite his Complaint through his appellate briefing.  *E.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a "party may not amend [a] pleading through statements in briefs").  Whether Plaintiff can pursue removal of a fiduciary in individual arbitration is thus irrelevant to this case.

In any event, Plaintiff's arguments fail for two additional reasons.  First, even if the arbitration provision in Section 17.10 of the Plan Document limits Plaintiff's ability to seek broad equitable remedies, that is not enough to invalidate the provision because DOL would still be able to seek such remedies.  Second, Section 17.10 does not limit Plaintiff's ability to seek any equitable remedies to which he may be entitled on his own behalf.

17

### 1. Enforcing the Arbitration Provision Here Does Not Render Plan-Wide Remedies Unavailable.

Contrary to Plaintiff's premise, the Plan's arbitration provision does not render plan-wide equitable remedies unavailable. Separate from participants' statutory right to pursue their claims, ERISA § 502(a)(2) authorizes the Secretary of Labor to bring actions on behalf of a plan to seek relief under § 409(a). *See LaRue*, 552 U.S. at 253. DOL can investigate and seek to remedy any breach, should it determine one has occurred. Nothing about the arbitration provision at issue curtails those suits or the relief that would be available through them.

The Supreme Court has noted an administrative agency's ability to pursue broader relief as another reason for enforcing individual arbitration provisions for federal statutory claims. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Supreme Court considered the enforceability of an arbitration agreement that required individual arbitration of age discrimination claims under the ADEA. The plaintiff argued (much like Plaintiff here) that "arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief and class actions." *Id.* at 32. The Supreme Court rejected this argument because, among other reasons, "arbitration agreements will not preclude the *EEOC* from bringing actions seeking class-wide and equitable relief." *Id.* (emphasis in original).

The Sixth Circuit recently applied the same reasoning in *Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805 (6th Cir. Aug. 30, 2021). There, Title VII plaintiffs alleged that a class action waiver impermissibly "limited the scope of possible relief by foreclosing their ability to obtain company-wide injunctive relief to eliminate an employer's discriminatory practices." *Id.* at *5. The Sixth Circuit disagreed because arbitrators generally have the power to fashion equitable relief. *Id.* at *6. And even if the arbitrator could not "award the exact injunctive remedy plaintiffs desire[d], the arbitration agreement with its class waiver policy '[would] not preclude the EEOC from bringing actions seeking class-wide and equitable relief.'" *Id.* (quoting *Gilmer*, 500 U.S. at 32).

Section 17.10 of the Plan Document does not, and cannot, limit DOL's ability to seek plan-wide equitable remedies under §§ 502(a)(2) and 409(a). For this reason—on top of the relief available in individual arbitrations by Plaintiff and other Plan participants—all ERISA remedies remain available.

## 2. All the Remedies Plaintiff Seeks for Himself Are Potentially Available in Arbitration.

Plaintiff has also fallen far short of establishing that any of the equitable relief he seeks is categorically unavailable in arbitration. Section 17.10(g)(iii), which addresses potential remedies under §§ 502(a) and 409(a), broadly authorizes "such other remedial and equitable relief as the arbitrator deems proper" so long as two conditions are met. A106. Those conditions are that the relief (1) "does not include

19

or result in the provision of *additional* benefits or monetary relief *to any Employee, Participant or Beneficiary other than the Claimant*," and (2) "is not *binding* on the Administrator or the Trustee with respect to *any Employee, Participant or Beneficiary other than the Claimant*." A106 (§ 17.10(g)(iii)) (emphasis added). Plaintiff has not shown that either condition is triggered with respect to any of the equitable remedies that he purports to be seeking.

As for the first condition, the forms of plan-wide equitable relief that Plaintiff supposedly seeks (rescission and invalidation of an indemnification provision, or even fiduciary removal) do not provide "additional benefits or monetary relief." As Plaintiff has described them, these forms of equitable relief are not "benefits or monetary relief" at all.[5] Although such remedies have "a Plan-wide effect, [they] do[] not provide additional benefits or monetary relief as prohibited" by an individualized arbitration provision. *Holmes v. Baptist Health S. Fla., Inc.*, No. 21-cv-22986, 2022 WL 180638, at *3 (S.D. Fla. Jan. 20, 2022).

---

[5] The Plan Document uses the term "benefits" to refer to the monetary retirement benefits that the Plan provides. *See, e.g.*, A102 (§ 17.02(a)) (Plan Administrator has "the power to determine the rights or eligibility under the Plan of Employees, Participants, or any other persons, *and the amounts of their benefits*[.]" (emphasis added)); A104 (§ 17.09(a)) ("If a Participant, Beneficiary or any other person who believes he may be entitled to *benefits* under the Plan (a "Claimant") has an unresolved question about eligibility for *benefits*, the form of *benefits*, or the amount of *benefits* to be received . . . ." (emphasis added)); *see also, e.g.*, A82 (§ 10.01); A87 (§ 11.03(f)).

As for the second condition, Plaintiff similarly strains to read the phrase "not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant" as precluding any equitable remedy that affects other plan participants. But this is not a reasonable reading of this language, for two reasons.

The term "binding" does not, as Plaintiff argues, mean merely that an equitable remedy (such as rescission) would have an *effect* on others beyond the Claimant. Rather, an equitable remedy would be "*binding* on an Administrator or Trustee *with respect to* any Employee, Participant or Beneficiary *other than* the Claimant" if such other person were able to sue in federal court to enforce the Claimant's arbitration award providing for such equitable remedy. In other words, the second condition prohibits someone other than Plaintiff from seeking to enforce Plaintiff's arbitration award—though Plaintiff would still be free to file an action to enforce his own arbitration award. Neither Plaintiff nor the District Court have explained how such a condition curtails *Plaintiff's* substantive rights to implicate the effective vindication doctrine. Indeed, such a limitation is common in arbitration agreements. *See, e.g.*, *Restatement (Second) of Judgments* § 84(4) (1982) ("If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication or arbitration proceeding, the extent to which the award has conclusive effect is determined in accordance with that limitation.").

Moreover, when read alongside the parallel wording of the first condition, the second condition likewise clearly focuses on relief that redresses injuries separate from a Claimant's own injuries. Both conditions curtail an arbitrator's ability to issue relief to someone "other than the Claimant." A106 (§ 17.10(g)(iii)). Put another way, what Section 17.10(g)(iii) forbids is remedies for others' injuries *but not* Plaintiffs' injuries. For instance, this second condition would prevent an arbitrator from ordering rescission of a transaction that had no effect on the Claimant personally. The equitable remedies that Plaintiff seeks (rescission, invalidation of an indemnification provision, etc.) clearly address injuries allegedly suffered by Plaintiff as well as other Plan participants and do not trigger the second condition. Such remedies, then, are potentially available to Plaintiff under Section 17.10.[6]

But even if there were a lingering question about whether the arbitration provision imposes "remedial limitations" that prevent its enforcement, "it would be premature" to address that question at this stage. *PacifiCare Health Sys., Inc. v. Book¸* 538 U.S. 401, 404 (2003). In *PacifiCare*, the Supreme Court faced a similar argument that arbitration provisions were unenforceable because they supposedly precluded an award of statutory treble damages. *Id.* at 403. It was not "clear,"

---

[6] For the same reasons, the similarly worded Section 17.10(f) also does not bar Plaintiff's ability under ERISA § 502(a)(3) to seek equitable remedies that redress his own alleged injuries. *See* A105.

however, that the provisions actually did prohibit the plaintiffs' desired remedy: the language in question prohibited "punitive" damages, which did not necessarily include the treble damages. *Id.* at 405-06. Because of the "doubt" and "uncertainty" over whether the contract language precluded the desired remedy, "the proper course [was] to compel arbitration." *Id.* at 406-07; *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) (explaining that courts in these circumstances should compel arbitration and address any effective vindication concerns at the award-enforcement stage). The same is true here.

The Supreme Court has long emphasized that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted); *see also Metro Indus. Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 385 (2d Cir. 1961) (describing longstanding "federal policy to construe liberally arbitration clauses . . . and to resolve doubts in favor of arbitration"); *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995) (Courts "must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration."). If there is any ambiguity in the Plan Document's arbitration provision, the Court should favor the interpretation that allows the provision's enforcement. The mere possibility that an arbitrator might wish to go beyond making Plaintiff whole for his alleged losses by additionally awarding a broader equitable remedy—

and might also read Section 17.10 as precluding this broader remedy—does not trigger the effective vindication exception to the FAA. Plaintiff's bare speculation on these points cannot defeat the FAA's strong mandate to enforce arbitration provisions.

## II. Plaintiff Is Bound by the Plan's Arbitration Provision Under Both ERISA and the FAA.

Plaintiff's final argument asks this Court to hold that a provision that was in the Plan Document from the beginning is not binding on Plaintiff because he did not sufficiently consent to it. This argument turns ERISA and the FAA on their heads.

Plaintiff concedes that, under ERISA, "[p]lan provisions might be binding in other contexts without notice or consent." Pl.'s Br. 49-50. The plan "is at the center of ERISA," and "[e]mployers have large leeway to design . . . plans as they see fit." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (citations omitted). Once employers set down a plan's terms in writing, those terms control. *See id.*; 29 U.S.C. § 1102(a)(1). Indeed, ERISA put "an elaborate scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995); *see* 29 U.S.C. § 1024(b). "This focus on the written terms of the plan is the linchpin of 'a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from

offering [ERISA] plans in the first place.'" *Heimeshoff*, 571 U.S. at 108 (citation omitted).

Against this bedrock ERISA doctrine, Plaintiff fails to cite even one case holding that an arbitration provision in a plan document somehow fails to bind a plan participant. The case law is just the opposite. *Dorman II*, 780 F. App'x at 512 ("A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."); *see also Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 724 (9th Cir. 2000) ("[I]f the plan contains an arbitration clause, the plaintiff must arbitrate the dispute in accordance with the clause in order to exhaust his administrative remedies before filing suit in federal court.").[7]

Plaintiff, though, concocts a theory that *the FAA* requires a level of notice and consent for plan arbitration provisions beyond what would otherwise be required for a plan provision to be binding under ERISA. In other words, Plaintiff is asserting that

---

[7] Plaintiff cites *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922 (6th Cir. 2014), but it undercuts his attempt to evade the Plan Document's arbitration provision. The *Smith* court *enforced* a forum-selection clause, despite the plaintiff's argument that the clause was not "the product of an arms-length transaction" because it was added to the plan seven years after the plaintiff began receiving benefits. *Id.* at 930. Obviously, that plaintiff did not have advance "notice of the provision and proceed anyway." Pl.'s Br. 51. The same principles require enforcing the arbitration provision here, which has been in the Plan Document since the Plan was first established. *See Viking River*, 142 S. Ct. at 1919 ("[A]n arbitration agreement is 'a specialized kind of forum-selection clause[.]'" (citation omitted)).

the arbitration provision in the Plan Document is subject to a higher standard—actual notice and affirmative consent—than ERISA would require for any other provision in the Plan Document.  But federal law (rather than state contract law) governs the enforceability of provisions in ERISA plans, and it dictates that participants are bound by all lawful ERISA plan terms.  *See, e.g.*, *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998).  Nothing in the FAA changes that.  In fact, creating a disparate enforceability standard for arbitration provisions would violate the FAA.

The FAA's main effect on the formation of arbitration agreements is to ensure arbitration agreements are *not* held to stricter standards than other agreements.  In *Kindred Nursing*, for example, the Supreme Court held that a state violated the FAA by making it harder to form arbitration agreements than other kinds of agreements.  137 S. Ct. at 1424-25.  Such a rule violated "the FAA's edict against singling out [arbitration] contracts for disfavored treatment."  *Id.* at 1427.  The Court explained that "[a] rule selectively finding arbitration contracts invalid because improperly formed fares no better under the [FAA] than a rule selectively refusing to enforce those agreements once properly made."  *Id.* at 1428.

Yet Plaintiff now argues the FAA *mandates* exactly that sort of rule for arbitration provisions in ERISA plans.  He could not be more wrong:  because any other lawful ERISA plan provision would be binding on Plaintiff here, so too is the Plan's arbitration provision.

26

## CONCLUSION

The Court should reverse the denial of Defendants' motion to compel arbitration and remand with instructions to compel Plaintiff to individually arbitrate his claims.

Dated:  July 8, 2022                          Respectfully submitted,

*s/ Lars C. Golumbic*                          *s/ Jeremy P. Blumenfeld*

Lars C. Golumbic                              Jeremy P. Blumenfeld
Michael J. Prame                              Margaret M. McDowell
Sarah M. Adams                                Jared R. Killeen
Paul J. Rinefierd                             Antonia M. Moran
GROOM LAW GROUP, CHARTERED                    MORGAN, LEWIS & BOCKIUS LLP
1701 Pennsylvania Avenue, NW,                 1701 Market Street
   Suite 1200                                 Philadelphia, PA  19103
Washington, DC  20006                         (215) 963-5000
(202) 857-0620

                                              Michael E. Kenneally
*Counsel for Argent Trust Company*            MORGAN, LEWIS & BOCKIUS LLP
                                              1111 Pennsylvania Avenue, NW
                                              Washington, DC  20004
                                              (202) 739-3000

                                              *Counsel for Ryan Sasson, Daniel*
                                              *Blumkin, Ian Behar, Duke Enterprises*
                                              *LLC, Twist Financial LLC, Blaise*
                                              *Investments LLC, and Strategic*
                                              *Financial Solutions, LLC*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(B) because it contains 6,626 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, Times New Roman 14-point font.


 Dated:  July 8, 2022                                    *s/ Jeremy P. Blumenfeld*
                                                         Jeremy P. Blumenfeld